**UNITED STATES of America,**

v.

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Overseas) Limited, Defendants.**

Cr. No. 91–0655 (JHG).

United States District Court, District of Columbia.

Jan. 7, 1993.

Stefan D. Cassella, Daniel Stark, and La-trena Carrington, Asset Forfeiture Office, U.S. Dept. of Justice, Washington, DC, for the government.

Michael Nussbaum and Eric L. Lewis, Nussbaum & Wald, Washington, DC, for Court appointed fiduciaries for the four corporate defendants.

All petitioners appeared pro se.

ORDER ADDRESSING THE GOVERN-MENT'S MOTION TO DISMISS PE-TITIONS OF DEPOSITORS AND AD-DITIONAL DEPOSITORS

JOYCE HENS GREEN, District Judge.

Presently pending are the government's Motion to Dismiss Petitions of BCCI Depositors and Motion to Dismiss Petitions of Additional BCCI Depositors. Upon consideration of the motions and all filings relating thereto, the petitions of Gerald Bolton, filed April 27, 1992, Arthur W.R. Cox, filed February 18, 1992, Harold Ephram Hanson, filed March 9, 1992, M. Zahidul Hoque, filed March 26, 1992, Anton Seravaseiyar, filed April 27, 1992, and Margaret Mary White, filed April 29, 1992 are dismissed.

## BACKGROUND

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered. Paragraph 1(e) of that Order of Forfeiture provides that the four corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of court-appointed fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement. Attached to the January 24, 1992 Order as Exhibit A was a list of specific BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a supplemental Order on January 31, 1992 which directed immediate seizure of the specific assets listed therein.

In satisfaction of 18 U.S.C. § 1963(l)(1), and to inform third parties of potential rights to seek recovery of assets declared forfeited, the United States published notice of the Order of Forfeiture, as amended, during the period between February 13, 1992 through March 27, 1992 in eleven major United States newspapers including the *Wall Street Journal*, the *New York Times*, the *Chicago Tribune*, and the *Los Angeles Daily Journal*. *See* Government's Compliance with Order of May 8, 1992, filed May 12, 1992. In addition, personal notice was sent to over 340 persons and entities as late as April 3, 1992. *Id.*

Arthur W.R. Cox ("Cox") filed a petition on February 13, 1992 asserting an interest in approximately $2,300 which he deposited in an account at the Sri Lanka branch of BCCI (Overseas) Limited. On March 9, 1992, Harold Ephram Hanson ("Hanson") filed a petition seeking recovery of $11,481.13, with interest, which he deposited in a checking account at the Douglas, Isle of Man branch of BCCI S.A. M. Zahidul Hoque ("Hoque") filed a petition on March 26, 1992 seeking to

recover approximately 50,000 Taka[1] which he deposited with the Dhaka, Bangladesh branch of BCCI (Overseas) Limited. On April 27, 1992 Anton Seravaseiyar ("Seravaseiyar") filed a petition seeking to recover $2,046 which he deposited with BCCI (Overseas) Sri Lanka.[2] Also on April 27, 1992, Gerald Bolton and his wife, J. Solley, filed a petition asserting an interest in approximately $100,000 which they deposited with a branch of BCCI S.A. in Luxembourg. Margaret Mary White submitted a petition on April 29, 1992 seeking recovery of 75,333.62 Pounds Sterling[3] which she deposited with Bank of Credit and Commerce Gibraltar, Limited ("BCC Gibraltar").

In accordance with a briefing schedule set by the Court, the government filed its Motion to Dismiss Petitions of BCCI Depositors, which addressed the petitions of Bolton, Cox, Hanson, and Hoque. The court-appointed fiduciaries for the four corporate defendants also filed a memorandum of law addressing those petitions. Shortly thereafter, the government filed its Motion to Dismiss Petitions of Additional BCCI Depositors, which addressed the petitions of Seravaseiyar and White.[4] Although Bolton, Hanson, and White have responded in some form to the government's motions, Cox, Hoque, and Seravaseiyar have not. The government has submitted a reply to White's opposition but has not replied to the responses of Bolton and Hanson.

1. According to the government, near the time it filed its Motion to Dismiss Petitions of BCCI Depositors, this amount equaled approximately $1,300. See government's Motion to Dismiss Petitions of BCCI Depositors at 2 n. 1.

2. Seravaseiyar contends that $2,000 of the funds which he seeks to recover was allegedly transferred on May 21, 1991 from an account at a Texas bank via the Sri Lanka branch's account at Security Pacific International Bank in New York, New York.

3. The government reports that as of June, 1992, this amount was equivalent to approximately $135,000.

4. The Motion to Dismiss Additional Depositors also addressed the petition filed by **S.A. Reza Shekarchian, M.R. Shekarchian, A.R. Shekarchian and Avedon, Inc.** ("the Shekarchians") on March 9, 1992. The Shekarchians allege that in exchange for several lines of credit with BCCI

## DISCUSSION

■ Following the entry of an order of forfeiture pursuant to 18 U.S.C. § 1963(a), a third party may petition the issuing court for a hearing to amend the order to exclude certain property in which the third party claims a legal right, title, or interest. See 18 U.S.C. § 1963(*l*)(2). Subsection 1963(*l*)(6) sets forth the elements which the petitioner must prove in order to recover assets previously declared forfeited and states in full:

> If, after [a] hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.[5]

Los Angeles, they deposited millions of dollars with BCCI London and provided to BCCI Los Angeles liens on Avedon, Inc.'s inventory, equipment, and receivables and on S.A. Reza Shekarchian's house. The Shekarchians seek approximately $1.2 million, which constitutes the amount of money deposited with BCCI London minus an offset for the lines of credit used by them, and dissolution of the liens. Because the facts giving rise to the Shekarchians' petition are somewhat different from the facts surrounding the claims of the six other depositors, the Shekarchians' petition will be addressed in a separate Order.

5. Title 18 U.S.C. § 1963(*l*)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the provision providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted those two provisions differently. Given the extreme similarity of the two statutes and the relative dearth of caselaw interpreting

Accordingly, a petitioner may recover forfeited assets under subsection 1963(*l*) in two ways. First, the petitioner may succeed by establishing all of the following:

(a) a "legal right, title, or interest"

(b) in property ordered forfeited, and

(c) that such "legal right, title, or interest" was either

(1) vested in the petitioner rather than the defendant at the time of the commission of the acts which gave rise to the forfeiture, or

(2) superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture.

In the alternative, a petitioner may succeed by establishing all of the following:

(a) that it is a "bona fide purchaser for value" of

(b) a legal "right, title, or interest"

(c) in property ordered forfeited, and

(d) was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture.

Only by establishing all elements of one of the two avenues may a third party obtain court-ordered relief from an order of forfeiture. *See United States v. Lavin*, 942 F.2d 177, 187 (3d Cir.1991) ("Those third parties who fall outside of both [avenues], regardless of how sympathetic they are, must petition the Attorney General for relief."). If a third party fails to allege in its petition all requisite elements, the court may dismiss the petition without providing a hearing. *See United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Magee-an*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd*, 822 F.2d 62 (9th Cir.1987); S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3374, 3391.

The United States contends that none of the petitioners which it deems "depositors" or "additional depositors" can establish all elements necessary to recover under § 1963(*l*). More specifically, the government argues, *inter alia*, that the depositors must

be considered general creditors of BCCI and that under relevant caselaw interpreting § 1963(*1*) and similar provisions, general creditors cannot assert a cognizable "legal right, title or interest" in any forfeited funds.

 Courts have recognized two basic types of bank deposits, namely general and special. *See Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327, 330 (2d Cir.1992), citing *Marine Bank v. Fulton Bank*, 69 U.S. (2 Wall.) 252, 256, 17 L.Ed. 785 (1864). When a general deposit is made, title to the deposited funds passes immediately to the bank in exchange for a promise by the bank to refund the same amount, or a portion thereof, on demand, and the bank may use the money for its own profit. *Id.* Accordingly, one who makes a general deposit is considered a general creditor of the bank. *See e.g., Peoples Westchester* at 332 ("an owner of a general deposit is a general creditor of a bank"); *Matter of Texas Mortgage Servs. Corp.*, 761 F.2d 1068, 1075 n. 11 (5th Cir.1985) ("Normally, funds deposited with a bank are general deposits which create a debtor-creditor relationship between the bank and its depositor."); *Crocker–Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir.1977) ("It is a well-settled principle of California law that the relationship between a bank and its depositor is one of debtor and creditor.") *See also* 3 MITCHIE ON BANKS AND BANKING Ch. 6, § 181 (perm. ed. rev. vol. 1974) and cases cited therein ("A general depositor is merely a general creditor of a bank"). When a special deposit is made, the depositor retains title to the money and the bank acts as a bailee. *See Peoples Westchester* at 330. A bank almost always must segregate specially deposited funds from other assets and may only use the funds for a specifically designated purpose. *See* 3 MITCHIE ON BANKS AND BANKING Ch. 6, § 184 (perm. ed. rev. vol. 1974) and cases cited therein.

 Whether a deposit is considered general or special depends upon the intent of the parties. Deposits are presumed to be

and applying § 1963(*l*), the Court's opinion relies on reasoning contained in § 853(n) cases as well as in § 1963(*l*) cases.

general, however, and the depositor bears the burden of overcoming that presumption. *See Peoples Westchester* at 330; *Matter of Texas Mortgage Services Corp.* at 1075 n. 11; 3 MITCHIE ON BANKS AND BANKING Ch. 6, § 184 (perm. ed. rev. vol. 1974) and cases cited therein. A bank's failure to maintain the segregation of deposited funds and its payment of interest on deposited money are " 'very strong evidence' " that a deposit is general rather than special. *Peoples Westchester* at 331 (quoting *Swan v. Children's Home Soc'y,* 67 F.2d 84, 87 (4th Cir.1933)).

■ The government contends that all six claimants whose petitions are the subject of this Order must be considered general, rather than special, depositors. Although all of them have been given ample opportunity to challenge the government's characterizations, none have done so. Even had Bolton, Cox, Hanson, Hoque, Seravaseiyar, and White claimed to be special depositors, however, filings submitted by them make clear that they intended to make only general deposits with BCCI. *See, e.g.,* first attachment to petition of Gerald Bolton, filed April 27, 1992 (standard deposit confirmation stating, "This deposit will be automatically renewed with interest at the rate ruling at the time of renewal for a like period unless we receive notice in writing to the contrary . . ."); Cox petition, filed February 18, 1992 (asserting interest arising from a foreign currency account); Hanson petition, filed March 9, 1992 (seeking to recover funds deposited in an interest-bearing checking account); Hoque petition, filed March 26, 1992 (seeking recovery of deposits in a personal savings account); first attachment to Seravaseiyar petition, filed April 27, 1992 (letter from O.J. Fernando to Anton Seravaseyar [sic], dated August 25, 1989, informing him that his account "remains operative, and any future remittances may be sent for the credit of this account"); first attachment to White petition, filed May 29, 1993 (letter from M.I. Haq to Ms. M. White, dated July 9, 1990, explaining the nature of accounts which BCC Gibraltar offered to her, including the amount and type of interest paid on such accounts). Therefore, the interests asserted in the petitions of the six depositors to amend the Order of Forfeiture must be considered to have arisen from a general creditor-debtor relationship.

■ As recognized by courts addressing the issue of whether general creditors can successfully petition to amend orders of forfeiture, a general creditor does not possess an interest in any specific asset of a debtor. Rather, such a creditor merely has a general interest in the debtor's entire estate. *See United States v. Schwimmer,* 968 F.2d 1570, 1581 (2d Cir.1992) ("A general creditor has no interest in a particular asset or particular funds that is either vested or superior to a defendant's. He may have a right to receive payment, but he does not have a property interest superior to defendant's in any particular asset or funds . . . ."); *United States v. Reckmeyer,* 836 F.2d 200, 206 & n. 3 (4th Cir.1987) ("Unlike secured creditors, general creditors cannot point to any one specific asset and claim that they are entitled to payment of the value of that specific asset. General creditors instead enjoy a legal interest in the entire estate of the debtor."); *United States v. Mageean,* 649 F.Supp. 820, 828 (D.Nev.1986), *aff'd,* 822 F.2d 62 (9th Cir. 1987). Because general creditors are unable to assert interests in specific assets, they cannot assert legal rights, titles, or interests in property ordered forfeited, at least in situations where a defendant's entire estate is not subject to forfeiture. *See Reckmeyer* at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtors' estate that frustrates general creditors who attempt to contest civil forfeitures."); *United States v. Campos,* 859 F.2d 1233, 1239 (6th Cir.1988) (" 'The court agrees that only legal interests are recognized and concedes the trade creditors do not, in a technical sense, have legal interest in the forfeited property.' ") (quoting *Mageean* at 828). Accordingly, given that the Court's Order of Forfeiture reaches only property located in the United States and not the entire estates of the four corporate defendants, and given that Bolton, Cox, Hanson, Hoque, Seravaseiyar, and White must be considered general creditors of BCCI, they cannot assert the appropriate interests in assets which the Court has ordered forfeited.

The petitions of those claimants, therefore, must be dismissed.[6]

The worldwide collapse of BCCI has brought enormous and continuing tragedy to innocent victims, and all losses, whatever the amount, suffered by the depositors are lamentable. Regardless of those losses and of the conclusion of this Order, however, the petitioners have been given an opportunity to file claims in liquidation proceedings in the appropriate jurisdictions, and the court-appointed fiduciaries for the four corporate defendants have undertaken to provide relevant information concerning those proceedings at least to most, and probably to all, of the petitioners. *See* Exhibit 1 to Court Appointed Fiduciaries' Memorandum Addressing Foreign Branch Depositors' Claims.

## CONCLUSION

For the reasons stated above, it is hereby

ORDERED that the petitions filed by the following claimants on the following dates are dismissed:

Gerald Bolton, filed April 27, 1992;

Arthur W.R. Cox, filed February 18, 1992;

Harold Ephram Hanson, filed March 9, 1992;

M. Zahidul Hoque, filed March 26, 1992;

Anton Seravaseiyar, filed April 27, 1992; and

Margaret Mary White, filed April 29, 1992.

IT IS SO ORDERED.

---

6. In light of the Court's conclusion, the issue of whether the petitioners' interests can be considered "vested" or "superior" to the interests of BCCI for purposes of applying § 1963(*l*)(6)(A) and the issue of whether the petitioners can be considered "bona fide purchasers for value" for purposes of applying § 1963(*l*)(6)(B) need not be resolved.