### UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.

Crim. Action No. 91–0655(JHG).

United States District Court, District of Columbia.

Aug. 26, 1997.

U.S. Dept. of Justice, Asset Forfeiture Office, Stefan D. Cassella, Michelle L. Crawford, for the Government.

BCCI Holdings (Luxembourg), S.A., Bank of Credit and Commerce Intern., S.A., Bank of Credit and Commerce Intern. (Overseas) Ltd., and Intern. Credit and Investment Co. (Overseas) Ltd., pro se.

*In re* **Third Round Incomplete Funds Transfer Petitioners**

**MEMORANDUM OPINION AND ORDER**

JOYCE HENS GREEN, District Judge.

Presently pending is the United States' Motion to Dismiss ("Motion to Dismiss") the incomplete funds transfer petitions of Aneel Zaman ("Zaman") and Sanjay Bhandari ("Bhandari"), which claims filed pursuant to 18 U.S.C. § 1963(*l*) ("L–Claims"). The government has moved to dismiss both claims due to lack of standing and for failure to state a claim. For the reasons expressed below, the Motion to Dismiss will be granted as to both petitioners.

1. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Com-

### BACKGROUND

The facts surrounding BCCI's collapse are well known in the financial and legal communities, but certain facts bear repeating to set the stage for resolving the instant motions to dismiss these L–Claims.[1] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law. 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban Affairs of the United States House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5, 1991, banking regulators in the United Kingdom, Luxembourg and the United States, froze assets owned or controlled by BCCI. In New York, the Superintendent of Banks seized BCCI's assets at various New York banks, including those at First American Bank of New York ("FABNY"). By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United

merce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

States of America. *See* Transcript of Guilty Plea Proceedings at 7 (Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture.

Under paragraph 9 of the Plea Agreement and pursuant to the Order of Forfeiture, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates).

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, which directed immediate seizure of the specific assets listed therein. The Court later amended the Order of Forfeiture to include additional assets, including property set forth in Second and Third Supplemental Lists of Forfeited Property. *See* Order of Forfeiture of July 29, 1992 (Second Order of Forfeiture); Order of Forfeiture of August 19, 1993 (Third Order of Forfeiture). Attached to the Third Order of Forfeiture, which is relevant to the petitioners' Third Round L–Claims that are presently before the Court, was the Third Supplemental List

of Forfeited Property aggregating $101,302,-465.54.

The Plea Agreement also established the Worldwide Victims Fund and the U.S. Fund. Under the terms of the Plea Agreement, forfeited assets were to be disbursed in equal amounts to the Worldwide Victims Fund and the U.S. Fund. *See* Plea Agreement ¶ 11(c). The broad purpose of the Worldwide Victims Fund, operated by the Court–Appointed Fiduciaries, is to distribute funds "only to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the law of countries subscribing to recognized norms of international justice." *Id.* ¶ 14.

The purpose of the U.S. Fund is more specific, but no less compensatory. In addition to allowing for reimbursement of the costs of investigation and prosecution of BCCI, bank insurance and other matters, the U.S. Fund is also available to provide "restitution to victims of BCCI, which may include remission to the Court Appointed Fiduciaries in accordance with 18 U.S.C. § 1963(g) for the purpose of facilitating an increase in assets available for distribution by the Court–Appointed Fiduciaries to innocent worldwide victims of BCCI, and which may include claims related to the failure of CenTrust, if any." *Id.* ¶ 12(f). Resulting from BCCI's guilty plea and the subsequent criminal forfeiture proceedings, by July 1996 the United States had "recovered nearly $800 million, virtually all of which has been, or will be, distributed to the victims of the fraud." Testimony of Stefan Cassella before the Judiciary Committee of the House of Representatives (July 22, 1996), 1996 WL 410099, *5 (F.D.C.H.).[2]

In compliance with 18 U.S.C. § 1963(*l*)(1)and to inform third parties of their potential rights to seek recovery of

---

**2.** In 1995, over $225 million was disbursed to the Court Appointed Fiduciaries for the Worldwide Victims Fund. *See* Notice to the Court at I (filed Aug. 13, 1996). On August 1, 1996, the United States disbursed an additional $83,651,-863.24, *id.* at 2, and, on May 22, 1997, Attorney

General Janet Reno "determined that the United States would transfer 100 percent of its share of the forfeited funds to the Worldwide Victims Fund so that the funds might be distributed to all BCCI victims equally on a pro rata basis." Notice to the Court at 2 (filed July 11, 1997).

assets declared forfeited in the Third Order of Forfeiture, the United States published notice of the Order of Forfeiture, as amended, during the period September 3, 1993, and September 27, 1993 in eleven major newspapers including the *Wall Street Journal,* the *New York Times,* the *Chicago Tribune,* the *Los Angeles Daily Journal,* the *Washington Post,* and the *International Herald Tribune.* *See* United States' Notice to the Court of the government's compliance with Order of August 19, 1993 (filed Sept. 21, 1993). In addition, personal notice was sent to over 523 persons and entities. *Id.* at Exhibit 2, at 11. Thereafter, the petitioners timely filed L–Claims, which the government now seeks to dismiss.[3]

## DISCUSSION

BCCI's assets were forfeited pursuant to 18 U.S.C. § 1963,[4] which sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18 U.S.C. § 1963(*l*)(2).[5] Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture:

If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

18 U.S.C. § 1963(*l*)(6).

■ A petitioner must first establish standing. Only by establishing standing and alleging the requisite elements of either § 1963(*l*)(6)(A) or § 1963 (*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Pacific Bank),* 956 F.Supp. 5, 10 (D.D.C.1997); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of BCCI(O) Foreign Branches),* 833 F.Supp. 32, 36 (D.D.C.1993), *aff'd,* 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States,* 515 U.S. 1160, 115

---

**3.** Although the opportunity for oral argument was offered to each Third Round petitioner, neither of the instant petitioners so requested.

**4.** 18 U.S.C. § 1963(a) provides, in relevant part:

Whoever violates any provision of section 1962 of this chapter shall ... forfeit to the United States, irrespective of any provision of State law—

(i) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962, and

(3) any property constituting, or derived from, any proceeds which the person has obtained directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The court, in imposing sentence on such person shall order ... that the person forfeit to the United States all property described in this subsection.

**5.** This provision provides:

Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1) whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Chawla)*, 833 F.Supp. 9, 13 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub dom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United States v. Schwimmer*, 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin*, 942 F.2d 177, 187 (3rd Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See In re Petition of Pacific Bank*, 956 F.Supp. at 10; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir. 1987).

In resolving a motion to dismiss, the Court assumes true, as she must, the facts alleged in a petitioner's L–Claim. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) may be granted if it appears that the petitioner can prove no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kenneda v. United States*, 880 F.2d 1439, 1442 (D.C.Cir.1989). The Court construes the petition liberally, granting a petitioner the benefit of any reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications*, 16 F.3d 1271, 1275 (D.C.Cir.1994).

Section 1963(l)(2) requires a party to assert "a legal interest in property forfeited to the United States" to have standing. This requirement is imposed to further the purpose of an L–Claim proceeding, which, while ancillary to the underlying criminal case, is intended to ensure that property forfeited to the United States was that of the defendant; it does not attempt to divide the defendant's estate among competing claimants. *See*

*United States v. BCCI Holdings (Luxembourg), S.A. (In re Petitions of General Creditors)*, 814 F.Supp. 106, 110 (D.D.C.1993). This latter task is properly performed at a liquidation proceeding, where all parties without a "legal interest" in forfeited property can recover on a *pro rata* basis with the many other claimants to the debtor's estate. *Id.* at 111: *see Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754 (10th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *First Empire Bank–New York v. F.D.I.C.*, 572 F.2d 1361 (9th Cir.1978), *cert. denied*, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

The critical inquiry in an L–proceeding is, therefore, ownership of the disputed funds. As recognized by this Court and most, if not all, other courts addressing the issue, an unsecured creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See In re Petition of Chawla*, 46 F.3d at 1191; *In re Petition of Pacific Bank*, 956 F.Supp. at 10; *see also Schwimmer*, 968 F.2d at 1581; *Campos*, 859 F.2d at 1240; *United States v. Reckmeyer*, 836 F.2d 200, 206 & n. 3 (4th Cir.1987); *Mageean*, 649 F.Supp. at 828. Because a general creditor is unable to assert an interest in a specific asset, it cannot assert a legal right, title, or interest "in property which has been ordered forfeited" as required by § 1963(l)(2), at least in situations where, like here, a defendant's entire estate is not subject to forfeiture. *In re Petition of Chawla*, 46 F.3d at 1191; *see Reckmeyer*, 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest … forfeitures."). Accordingly, absent a showing of an interest in a specific asset, the petitioners would lack standing to assert a claim in these L–proceedings.

### L–Claim of Aneel Zaman.

Zaman seeks $35,000 from forfeited BCCI (Overseas) Lahore, Pakistan account number 11386001, which BCCI account was

held at FABNY. On July 5, 1991, acting as originator, see N.Y.U.C.C. § 4–A–103(1)(b), Zaman requested that originating bank Wells Fargo Bank, see id. § 4–A–104(3), transfer $35,000 from his account at Wells Fargo to the account of beneficiary Sigmatech at beneficiary bank BCCI (Overseas) Rawalpindi, Pakistan. See id § 4–A–104(4) (defining beneficiary); id. § 4–A–103(1)(C) (defining beneficiary bank). Relying upon its correspondent, intermediary bank FABNY, in New York, see id §§ 4–A–104(2); 4–A–103(1)(d), Wells Fargo issued a payment order for FABNY to debit its account and credit the same to BCCI's account at FABNY. Although FABNY credited BCCI's account, the transfer of funds to Sigmatech's account was not completed prior to the intervention.

As the entity giving an instruction to a receiving bank, id. § 4–A–103(1)(e), FABNY was "the bank with correspondent relations between both the originator's bank and beneficiary's bank, [which] implement[ed] a payment order received by it by instructing the beneficiary's bank to transfer funds to the beneficiary." Fry, *Basic Concepts in Article 4A: Scope and Definitions*, 45 Bus. Law. 1401, 1412 (1990). *See generally id.* at 1415–16 (describing funds transfer relationship among originator's bank, beneficiary's bank and a mutual correspondent similar to relationship between Wells Fargo, FABNY and BCCI here).

Acceptance within the meaning of the New York Uniform Commercial Code ("N.Y.U.C.C."), which provides the rule of decision, is key, because title to funds in a wire transfer is passed to a receiving bank upon acceptance of a payment order.[6] See,

*e.g., In re Petitions of General Creditors*, 814 F.Supp. at 109; *Shawmut Worcester County Bank v. First American Bank & Trust*, 731 F.Supp. 57, 60 (D.Mass.1990). Under Article 4–A, and directly applicable to these facts, a beneficiary bank (like BCCI here) accepts a payment order when the bank receives payment of the entire amount of the sender's order pursuant to paragraph (a) or (b) of Article 4–A–403(1). N.Y.U.C.C. § 4–A–209(2)(b). Article 4–A–302(1)(b) provides that, if the sender is a bank (like FABNY here), payment occurs when the sender credits an account of the receiving bank with the sender. *Id.* § 4–A–403(1)(b); see Ballen & Diana, *Duties of the Beneficiary's Bank*, 45 Bus.Law. 1467, 1468 (1990) ("payment by the sender (assuming the sender is a bank) to the beneficiary's bank occurs ... if the sender credited an account of the beneficiary's bank with the sender"). Of the acceptance possibilities relevant here, a beneficiary bank accepts a payment order when a correspondent bank acting as a sender credits beneficiary bank's account. N.Y.U.C.C. §§ 209(2)(b); 403(1)(b).

Examined in this light, Zaman's L–Claim must be dismissed. Once the funds were credited to BCCI's account, it accepted the payment order and title passed to BCCI. When BCCI failed to perform by paying the intended beneficiary, Zaman was left with a cause of action against BCCI. Such an unsecured claim simply leaves him, at most, in the position of a general creditor of BCCI.[7] And, it is the law of this Circuit that general creditors lack standing to assert claims under 18 U.S.C. § 1963(*l*). *In re Petition of Chawla*, 46 F.3d 1185, 1191 (D.C.Cir.), *cert. denied*

---

**6.** A payment order is defined in Art. 4–A–103(1)(a) as

an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary if:

(i) the instruction does not state a condition to payment to the beneficiary other time of payment,

(ii) the receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment from the sender, and

(iii) the instruction is transmitted by the sender directly to the receiving bank or to an agen-

cy, funds transfer system, or communication system for transmittal to the receiving bank.

**7.** *See generally* Baxter & Bhala, *Proper and Improper Execution of Payment Orders*, 45 Bus.Law. 1447, 1461–62 (1990) (where beneficiary bank fails to accept a payment order, the originator retains title and is entitled to refund; however, where bank acquiring title is insolvent, but accepts a payment order thus acquiring title to the credit, the sender bears risk of loss and becomes a general creditor of an insolvent bank) (citing U.C.C. §§ 402, 506); Norman, *Settlement Obligations and Bank Insolvency*, 45 Bus.Law. 1473, 1477 (insolvency risk is on the sender).

*sub nom. Chawla v. United States,* 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). Moreover, the inability to assert a legal interest in a specific asset would undermine the petitioner's claim on the merits. *See, e.g., In re Petition of General Creditors,* 814 F.Supp. at 110–11. Like other general creditors, Zaman is free to petition the Attorney General for equitable remission of his claim or submit an application for relief to the Worldwide Victims Fund. However, his L–Claim in this proceeding will be dismissed.

**L–Claim of Sanjay Bhandari.**

■ Bhandari claims an interest in $10,000 in a BCC Hong Kong account at the Bank of New York ("BNY"), which account was *not* seized pursuant to the Third Order of Forfeiture. The Court accepts the following facts as true: On July 5, 1991, originator GEMCO in Hong Kong initiated a wire transfer from the originator's bank, BCC Hong Kong, to beneficiary Bhandari's account at Citibank, the beneficiary's bank. To execute this transaction, BCC Hong Kong issued a payment order to intermediary bank BNY, instructing it to debit BCC Hong Kong's account at BNY and credit Citibank's account for further transfer to beneficiary Bhandari. However, as it can do under Article 4–A of the New York Uniform Commercial Code, *see* N.Y.U.C.C. § 4–A–209 Official Comment 3; *id.* § 4–A–212, the intermediary (and receiving) bank BNY rejected the payment order. *See* Baxter & Bhala, *Proper and Improper Execution of Payment Orders,* 45 Bus. Law. 1447, 1452–53 (1990) ("Article 4A imposes *no* duty to execute on the pail of a receiving bank, and expressly provides that there is no 'duty to accept a payment order or, before acceptance, to take any action, or refrain from taking any action, with respect to an order.' ") (quoting U.C.C. § 4A–212). BNY neither debited BCC Hong Kong's account nor credited Citibank's account. Bhandari's account was therefore never credited.

Thus, Bhandari's L–Claim must be dismissed. Title to funds represented by a credit passes upon acceptance by the receiving bank. *See supra.* In this transaction, BCC Hong Kong retained title because BNY rejected the payment order. N.Y.U.C.C.

§ 4–A–209 Official Comment 3; *id.* § 4–A–210. At most, Bhandari is a general creditor of BCCI. As such, he lacks standing in this L–Claim proceeding. And, Bhandari's claim fails for an additional reason: the funds he seeks were not seized pursuant to the Third Order of Forfeiture and, therefore, the Court lacks jurisdiction over that property. *United States v. BCCI Holdings (Luxembourg), S.A., (In re Petition of Khawaja Qadeer Ahmed),* 923 F.Supp. 264, 265 (D.D.C.1996). For both of the aforementioned reasons, Bhandari's L–Claim is fatally flawed and will be dismissed.

## CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the government's Motion to Dismiss is granted and the L–Claims of Aneel Zaman and Sanjay Bhandari are dismissed. Judgment will be entered separately in accordance with Fed.R.Civ.P. 58

IT IS SO ORDERED.

### *In re* Third Round Incomplete Funds Transfer Petitioners

### JUDGMENT

In accordance with the Memorandum Opinion and Order issued this date and pursuant to Fed.R.Civ.P. 58, judgment is hereby entered in favor of the United States and against Petitioner Aneel Zaman.

IT IS SO ORDERED.