**UNITED STATES of America**

v.

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.**

Criminal Action No. 91–0655 (JHG).

United States District Court,
District of Columbia.

April 16, 1998.

Stefan D. Cassella, Assistant Chief, Asset Forfeiture and Money Laundering Section, Washington DC, for U.S.

John P. Hume, Marc E. Elias, Perkins Coie, Washington, DC, for Amjad Awan.

## MEMORANDUM OPINION AND ORDER

### In re Second Round Petition of Amjad Awan

JOYCE HENS GREEN, District Judge.

This case involves Amjad Awan's petition filed pursuant to 18 U.S.C. § 1963(*l*) ("L–Claim"). Awan seeks to recover the proceeds from the 1992 sale of a condominium in Washington, D.C., which were previously found to be the assets of the corporate criminal defendants (collectively referred to as "BCCI") subject to forfeiture to the United States. Awan is a former employee of Defendant Bank of Credit and Commerce International, S.A. who was convicted of money laundering in 1990 in connection with his employment. *See United States v. Awan*, 966 F.2d 1415 (11th Cir.1992).

Presently before the Court is the United States' motion for reconsideration of this Court's prior memorandum opinion and order, issued August 26, 1997. In its present motion, the United States has presented the Court with thirteen pages of new arguments to supplement what was argued in only a cursory paragraph in its memorandum in support of its motion to dismiss. Because some of the United States' arguments have merit, the Court shall modify its previous Order and remove the stay of proceedings imposed therein. Instead, the Court shall deny the United States' motion to dismiss the Second Round Petition of Amjad Awan.

### BACKGROUND

The following facts are assumed to be true for the purposes of the motion to dismiss and the motion for reconsideration. Beginning in 1982, Awan managed the personal bank ac-counts of General Manuel Noriega. As such, he was authorized to deposit and withdraw money from Noriega's accounts with BCCI, including the account at BCCI (London), which was opened in 1984 after being transferred to London from BCCI (Panama). Awan Aff. ¶ 3. In 1984, Awan was transferred to BCCI's Washington office, where in addition to other duties, he continued to manage Noriega's accounts. *Id.* ¶ 4.

In 1986, Awan decided to purchase condominium # 723 East, at 4201 Cathedral Ave., N.W., in Washington, D.C., for $175,000. *Id.* After making a down payment from his personal checking account in the amount of $17,500, Awan intended to rely upon a gift from his father in Pakistan to pay the balance. *Id.* ¶ 5. However, after he learned that the gift from his father would not arrive by wire transfer in time for closing, he asked General Noriega for a personal loan. Noriega agreed, and, on August 20, 1986, Awan directed the transfer from Noriega's account at BCCI (London) to First American Bank in Washington, D.C. *Id.* ¶¶ 6–7.

On September 25, 1986, pursuant to Awan's direction, First American issued a cashier's check made payable to Homeowner Guardian and Title in the amount of $161,079.94. *Id.* ¶¶ 8–9. The transaction was then completed, and Awan claims that he later repaid Noriega's loan: "When the funds to repay the loan from General Noriega became available from my father, Noriega instructed me to have the funds deposited in his account at a Panamanian bank. In accordance with General Noriega's instructions, I asked my father to transfer money to General Noriega's account, a non-BCCI-Panamanian Bank." *Id.* ¶ 10.

In 1988, Awan and other BCCI employees were indicted in the Middle District of Florida for offenses arising out of a conspiracy to launder illegal drug proceeds through BCCI. On July 29, 1991, Awan was convicted and later sentenced to 12 years in prison. *Id.* ¶ 12. His conviction was affirmed on appeal. *See United States v. Awan*, 966 F.2d 1415 (11th Cir.1992).

Under a grant of use immunity, *see* 18 U.S.C. § 6002,[1] Awan testified at Noriega's trial and cooperated in BCCI-related investigations. Awan Aff. ¶ 13 & Ex. P (letters granting use immunity). "Awan met extensively with Tampa prosecutors, as well as with the Noriega prosecution team from Miami." Hume Affidavit ("Aff.") ¶ 3. And during these debriefings, "there were extensive discussions about the Cathedral Avenue property and the fact that the funds came from a loan from General Noriega." *Id.* Awan disclosed to the prosecutors his financial relationship with Noriega because it was contemplated that he would be testifying against Noriega. *Id.* ¶¶ 4–5. Noriega was later convicted of conspiracy to commit racketeering, racketeering, conspiracy to import and distribute cocaine, manufacture of cocaine, conspiracy to manufacture, distribute, and import cocaine, and traveling in interstate or foreign commerce to promote unlawful enterprise. *United States v. Noriega*, 746 F.Supp. 1506 (S.D.Fla.), *conviction aff'd*, 117 F.3d 1206 (11th Cir.1997). As a result of Awan's cooperation, Awan's sentence was reduced to six and one-half years and $95,000 of his $ 100,000 fine was remitted.

In February 1991, Awan also met with prosecutors from the New York District Attorney's Office in Manhattan in connection with the investigation of BCCI, First American Bank, Robert Altman and Clark Clifford. "The subject of the Cathedral Avenue property and the loan from General Noriega was discussed extensively. This information was also given pursuant to use immunity." Hume Aff. ¶ 5. Awan's counsel was advised later that summer that "information that Mr. Awan provided to the Tampa Office was being shared continually with the United States Department of Justice Criminal Division, which had assumed control of the overall BCCI investigation and prosecution." *Id.* ¶ 7.

Amidst Awan's legal travails, BCCI collapsed.[2] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law. 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban Affairs of the United States House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5, 1991, banking regulators in the United Kingdom, Luxembourg and the United States, froze assets owned or controlled by BCCI. By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On December 19, 1991, a Superseding Information was filed in which Awan was named as a participant in connection with six predicate acts of money laundering. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United States of America. *See* Transcript of Guilty Plea Proceedings at 7

---

1. This statute provides, in relevant part, that when a witness testifies under a grant of use immunity, "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

2. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

(Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture.

Under paragraph 9 of the Plea Agreement and pursuant to the Order of Forfeiture, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates).

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, which directed immediate seizure of the specific assets listed therein.

In 1992, Awan attempted to sell the condominium, but the government learned of the sale and moved to amend the Order of Forfeiture to include the proceeds of that sale.[3] The Court later amended the Order of Forfeiture to include additional assets, including

property set forth in a Second Supplemental Lists of Forfeited Property. *See* Order of Forfeiture of July 29, 1992 (Second Order of Forfeiture). The property Awan seeks was seized pursuant to the Second Order. The government later provided Awan with notice of the seizure, and Awan's timely L–Claim followed.[4]

Awan alleges that BCCI has no interest in the condominium purchased in 1986, because he relied upon a "bridge loan" from Noriega that he later repaid. Awan argues that forfeiture under 18 U.S.C. § 1963(*l*)(6)(A) "is not appropriate because [he] has exclusive title to the property and the proceeds of its sale," L–Claim at 1 (as amended), and that he "qualifies as a bona fide purchaser for value under 18 U.S.C. § 1963(*l*)(6)(B) because he purchased the condominium for fair value without knowledge that his property would be subject to forfeiture." *Id.* at 2. Alternatively, Awan asks the Court to vacate the Order of Forfeiture (as applied to such proceeds) unless and until the United States can prove it did not rely on his immunized testimony to seek forfeiture of the condominium's proceeds. *Id.*

The United States subsequently moved to dismiss Awan's L–Claim on the grounds that 18 U.S.C. § 1963(*l*)(6)(A) is inapplicable to Awan's case, and that Awan cannot, as a matter of law, be considered a bona fide purchaser for value pursuant to 18 U.S.C. § 1963(*l*)(6)(B).

## DISCUSSION

The proceeds of the condominium sale at issue here were forfeited pursuant to 18 U.S.C. § 1963, which sets forth an orderly procedure by which third parties seeking to

---

**3.** In its motion to amend the Order of Forfeiture, the Government stated "Awan had purchased [the condominium] with funds from one of the defendants. Because the proceeds of the sale of the condominium are traceable to property held by BCCI, S.A., they are forfeitable to the government under ¶ 1(e) of the Order of Forfeiture." Mot. to Amend Order of Forfeiture at 5 (filed June 24, 1992). The Government also stated that its assertion was premised on documentary evidence available to it indicating that, as an employee of BCCI's Washington office, Awan received loans from BCCI. *Id.* at Ex. B. In its instant motion to dismiss, the United States reas-

serted the earlier basis for its motion to amend the Order of Forfeiture and contended that there was no "connection between the forfeiture and Awan's testimony." Motion to Dismiss at 10.

**4.** Awan originally sought $140,478.46. However, the United States later moved to exclude $76,378.65 that it determined was exempt from forfeiture pursuant to Justice Department guidelines regarding attorney's fees. United States' Notice of Compliance at 2 (filed Jan. 17, 1996). Awan now seeks the balance, which remains in the custody of the U.S. Marshals Service.

recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18 U.S.C. § 1963(*l*)(2).[5] Under Section 1963(c), "[a]ll right, title, and interest in property" that is forfeited "vests in the United States upon the commission of the act giving rise to forfeiture under this section." Congress intended that this Section void any attempt by a third party to acquire an interest in the defendant's property *unless* the third party was a bona fide purchaser:

> Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (*l*) that he is a bona fide purchaser for value of such property who at the time of the purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

18 U.S.C. § 1963(c).

Section 1963(*l*)(6)(B) sets forth the substantive elements that the third party, who acquires the defendant's property after the commission of the criminal act, must establish to obtain amendment of an order of forfeiture:

> If, after the hearing, the court determines that the petitioner

has established by a preponderance of the evidence that—

> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination. 18 U.S.C. § 1963(*l*)(6)(B).

A petitioner must first establish standing. Only by establishing standing and alleging the requisite elements of either § 1963(*l*)(6)(A) or § 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture.[6] If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing.[7]

In resolving a motion to dismiss, the Court assumes true the facts alleged by the petitioner in the L–Claim. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) may be granted if it appears that the petitioner can prove no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *In re Swine Flu Immunization Products Liability Litigation*, 880 F.2d 1439, 1442 (D.C.Cir.1989). The Court must construe the petition liberally, granting a petitioner the benefit of all reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Maljack Productions, Inc. v. Motion Picture*

---

**5.** This provision provides:

> Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

**6.** *See United States v. BCCI Holdings (Luxembourg), S.A., et al.*, 956 F.Supp. 5, 10 (D.D.C. 1997); *United States v. BCCI Holdings (Luxembourg), S.A., et al.*, 833 F.Supp. 32, 36 (D.D.C. 1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515

U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), S.A., et al.*, 833 F.Supp. 9, 13 (D.D.C. 1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United States v. Schwimmer*, 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin*, 942 F.2d 177, 187 (3rd Cir.1991).

**7.** *See U.S. v. BCCI Holdings (Luxembourg) S.A.*, 956 F.Supp. at 10; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983), 1984 U.S. Code Cong. & Admin. News 3182; *United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir.1987).

*Assoc. of America,* 52 F.3d 373, 375 (D.C.Cir. 1995). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications,* 16 F.3d 1271, 1275 (D.C.Cir.1994).

█ Taking the facts as alleged to be true, Awan still can not prevail under Subsection 1963(*l* )(6)(A). When Noriega's funds used to purchase the condominium were deposited with BCCI as a general deposit, BCCI acquired title to those funds. *See, e.g., United States v. BCCI Holdings (Luxembourg),* 814 F.Supp. 106, 109–10 (D.D.C.1993), *citing, inter alia, Peoples Westchester Sav. Bank v. FDIC,* 961 F.2d 327, 330 (2d Cir.1992). Because BCCI's criminal conduct occurred from 1978 to 1991, *see BCCI Holdings (Luxembourg), S.A.,* 814 F.Supp. at 113 n. 4, the Government's interest in those funds arose at the moment BCCI acquired title pursuant to the "relation back" doctrine, which provides that "[a]ll right, title and interest in property described in subsection (a) vests in the United States upon commission of the act giving rise to forfeiture under this section." 18 U.S.C. § 1963(c).

Section 1963(c) further provides that "any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture ...." unless the transferee can show that he is a bona fide purchaser under Subsection 1963(*l* )(6)(B). *See* 18 U.S.C. § 1963(c). Funds in the amount of $161,079.94 were subsequently transferred from BCCI, via First American, to Homeowner Guardian and Title. Awan Aff. ¶¶ 6–9. Since the transfer was a subsequent transfer to a person other than the defendant, Subsection 1963(*l* )(6)(A) is simply inapplicable. Awan can only prevail if he can demonstrate that he is a bona fide purchaser for value under Subsection 1963(*l* )(6)(B).

█ The United States argues that Awan cannot have been a bona fide purchaser for value in 1986. It reasons that because Awan was convicted for criminal conduct in 1988, *as a matter of law* he could not reasonably have been without cause to believe that the condominium was subject to forfeiture in 1986. The United States' argument is not without

basis: Awan was a major participant in the misconduct that led to the money-laundering convictions of him, his codefendants, and BCCI. Awan was convicted of conduct that is related to the corporate defendants' conviction for rackeetering. Moreover, he was expressly named in six predicate acts of the Superseding Information to which the corporate defendants pled guilty in this matter. *See* Superseding Information at 26–28 (Rackeetering Acts 10, 11, 13, 15, 16 and 19).

However, the United States' argument reaches too far. In resolving a motion to dismiss, the Court must take the facts as alleged by Awan to be true and must give him the benefit of all reasonable inferences. Awan has alleged that he had no reason to believe in 1986 that the condominium that he purchased with an alleged bridge loan from General Noriega would be subject to forfeiture. On the current state of the record, the Court cannot sweep aside Awan's allegations and hold that as a matter of law he could not have been a bona fide purchaser for value in 1986 on the basis of a conviction for his conduct in 1988. Therefore, the United States' motion to dismiss Awan's L-claim must be denied.

As an alternative defense to the Government's motion, Awan challenged the initial forfeiture decision, alleging that the Government only learned of the existence of the condominium through Awan's immunized testimony given pursuant to use immunity under 18 U.S.C. § 6002. *See* Awan Opp. Mem. pp. 12–14. While the Court addressed this issue in its initial opinion, upon reconsideration, the Court finds that the issue is not ripe for decision at this time. Awan raised the issue as a defense only and not as an independent motion. The only motions presently at issue are the Government's motion for reconsideration, which will be granted, and its motion to dismiss the L–claim, which must be denied.

## CONCLUSION

Accordingly, upon consideration of the entire record, and for the reasons stated, it is hereby

**ORDERED** that the United States' motion for reconsideration is GRANTED; and it is

**FURTHER ORDERED** that the United States' motion to dismiss the Second Round Petition of Amjad Awan is DENIED; and it is

**FURTHER ORDERED** that the Court's August 26, 1997 Memorandum Opinion and Order is modified as stated herein.

IT IS SO ORDERED.