UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Overseas) Limited, Defendants.

Crim. No. 91–0655 (JHG).

United States District Court, District of Columbia.

July 29, 1992.

As Amended Aug. 18, 1992.

Stefan D. Cassella, Asset Forfeiture Office, Bea L. Witzleben, Commercial Litigation Branch, Washington, D.C., for U.S.

Michael Nussbaum, Eric L. Lewis, Nussbaum & Wald, Washington, D.C. (Court-appointed), fiduciary.

Paul K. Rooney, Paul K. Rooney, P.C., New York City, for claimant ICIC Investments Ltd.

## ORDER OF FORFEITURE

JOYCE HENS GREEN, District Judge.

On January 24, 1992, 1992 WL 100334, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, an Order of Forfeiture was entered. Paragraph 1(e) of that Order of Forfeiture provides that the four corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of court-appointed fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement.

On June 24, 1992, the government filed a Motion to Amend Order of Forfeiture to Include Additional Property, seeking forfeiture of assets in newly discovered bank accounts held in the names of the corporate defendants, proceeds from the sale of a condominium purchased with resources provided by a corporate defendant, money remaining in a "BCCI Legal Fund" established by one of the corporate defendants for the defense of its employees' legal interests, a bankruptcy distribution to one of the corporate defendants, and assets held at various New York financial institutions in the name of ICIC Investments Ltd. ("Investments"), a sibling corporation of defendant ICIC (Overseas) Ltd. ("Overseas"). Accompanying the motion were a Memorandum of the United States in Support of its Motion to Amend Order of Forfeiture to Include Assets Held in the Name "ICIC Investments Limited," a motion for leave to file the memorandum in excess of page limit,[1] and numerous exhibits supporting the government's claims of forfeitability. While implicitly recognizing that Investments was not charged as a defendant in this action, that Investments was not a party to the plea agreement, and that Investments was not specifically named in the Court's January 24, 1992 Order of Forfeiture, the government argues in its memorandum that assets held in the name of Investments are nonetheless forfeitable because Investments was the alter ego of one or more of the corporate defendants and because assets held in the name of Investments were transferred to Investments by the defendants after the United States' interest in them arose. Pursuant to 18 U.S.C. § 1963(d)(1)(A), the Court restrained fourteen New York financial institutions from interfering with, moving, transfer-

1. The motion for leave to file in excess of page limit has been granted in a separate order.

ring, disposing, altering, or otherwise changing the *status quo* of any assets held in the name of Investments pending resolution of the government's motion to amend.

In a filing dated July 7, 1992, the court-appointed fiduciaries for the four corporate defendants represented that they do not object to forfeiture of the assets of Investments as set forth in the government's motion, subject to the filing of claims pursuant to 18 U.S.C. § 1963(*l*). Counsel for Investments, however, submitted to the Court on July 7, 1992 a Memorandum of Points and Authorities in Opposition to Government's Motion to Amend Order of Forfeiture. The government filed a reply to Investments' opposition, claiming, *inter alia*, that Investments may challenge the forfeiture of assets only by filing a petition pursuant to 18 U.S.C. § 1963(*l*) after the assets are forfeited. On July 24, 1992, counsel for Investments filed a Motion for Leave to File Sur Reply Memorandum in Opposition to the Government's Motion to Amend Order of Forfeiture. Because Investments does not have standing to challenge the forfeiture at this time, *see* 18 U.S.C. § 1963(i), its motion for leave has been denied in a separate order.

■ Through its motion to amend and the exhibits attached thereto, the government has satisfactorily established that the accounts held by the various financial institutions in the names of the corporate defendants, the proceeds from the sale of the condominium purchased by Amjad Awan with funds from one of the corporate defendants, the legal fund established by one of the corporate defendants, and the claim filed on behalf of BCCI Overseas (Miami Agency) in the Florida bankruptcy proceeding of General Coffee Corporation are for-

feitable under 18 U.S.C. § 1963, the plea agreement between the parties, filed December 19, 1991, and the Order of Forfeiture of January 24, 1992. Consequently, the forfeiture of those assets is ordered below. Additionally, because treating Investments as an alter ego of the corporate defendants is appropriate under the relevant law and facts for the reasons stated below, forfeiture of assets held in the name of Investments is also ordered.

■ Title 18 U.S.C. § 1963, the applicable forfeiture provision in this case, states in the most general of terms that "interests," "securities," and "claims" in property or "enterprises" relating to racketeering activities are forfeitable.[2] Numerous courts, including the Supreme Court, have acknowledged that the broad terms used to define forfeitable assets in § 1963 reflect a strong and unambiguous legislative intent to separate a convicted racketeer from all assets, in whatever form, obtained from and used to further racketeering activities. *See, e.g., United States v. Busher*, 817 F.2d 1409, 1412–13 (9th Cir.1987) ("Section 1963 is purposely broad. ... [It] was designed to totally separate a racketeer from the enterprise he operates."); *United States v. Ginsburg*, 773 F.2d 798, 802 (7th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986) ("The statute is replete with words and phrases of extraordinary breadth further evidencing congressional intent to enact a statute of exceedingly broad scope."); *United States v. Jacobson*, 691 F.2d 110, 113 (2nd Cir.1982) (use of the terms "interest" and "property ... right" reflects a Congressional intent to insure a broad reach of forfeiture sanctions). As the Supreme Court has stated:

---

2. Subsection (a) of § 1963 states in relevant part:

Whoever violates any provision of section 1962 of this chapter ... shall forfeit to the United States, irrespective of any provision of State law—

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

It undoubtedly was because Congress did not wish the forfeiture provision of § 1963(a) to be limited by rigid and technical definitions drawn from other areas of the law that it selected the broad term "interest" to describe the things that are subject to forfeiture under the statute. Congress selected this general term apparently because it was fully consistent with the pattern of the RICO statute in utilizing terms and concepts of breadth. *Russello v. United States,* 464 U.S. 16, 21, 104 S.Ct. 296, 299–300, 78 L.Ed.2d 17 (1983). In light of the deliberately broad language of § 1963 and the ambitious purpose of RICO, interpretation of the term "interest" to include the assets of a racketeering corporation's alter ego clearly is warranted.[3]

■ The government's motion to amend and the voluminous exhibits attached thereto satisfactorily establish that Investments was the alter ego of one or more of the corporate defendants. It is unnecessary to reiterate every relevant fact supporting the Court's determination; it is sufficient to note as particularly significant the frequent commingling of property and business affairs of Investments and Overseas, the financial dependence of Investments on Overseas and related entities, the commonality of ownership and management of Investments and Overseas, and the sharing of the same building, business logo, telex, post office box, and telephone line for facsimile. Facts contained in the Report of the Joint Provisional Liquidators of International Credit and Investment Company (Overseas) Limited, attached to the court-appointed fiduciaries' response to the government's motion to amend, also lend support for the disregard of Investments' separate corporate form. Page 2 of the Report, dated August 30, 1991, states:

In a number of material respects, the ICIC Group [*i.e.,* Investments, Overseas, and their sibling and parent corporations] appears to have conducted its affairs as a single entity, without clearly identifying which company or entity within the ICIC Group was concerned with or responsible for any particular transaction. This has further complicated the Provisional Liquidators' investigations.

Given the relationship between Investments and the named defendants as established by the government's exhibits and, to a lesser extent, the Report of the Joint Provisional Liquidators submitted by the court-appointed fiduciaries for the four corporate defendants, and in light of the broad language of § 1963(a) and the legislative history of RICO, the Court disregards the corporate form of Investments and considers the assets of Investments forfeitable "interests" of the named corporate defendants. To do otherwise would seriously undermine the legislative purpose of § 1963, namely, to " 'punish, deter, incapacitate, and ... directly to remove the corrupting influence from the channels of commerce.' " *Russello* 464 U.S. at 28, 104 S.Ct. at 303 (*quoting* 116 Cong.Rec. 18955 (remarks of Sen. McClellan)).[4]

Accordingly, for the reasons stated above, it is hereby

ORDERED that the assets listed on the attached pages entitled "Second Supplemental List of Forfeited Property" and all property held in the United States in the name of ICIC Investments Ltd. whether or not listed on the attached pages are declared forfeited and subject to the Court's Order of Forfeiture of January 24, 1992.

It is FURTHER ORDERED that the United States Marshals Service shall seize all assets forfeitable under this Order

---

**3.** Although it has not addressed piercing the corporate veil in a RICO context, the Supreme Court has consistently held that a corporate form should not be respected when to do so would defeat a legislative policy or work fraud or injustice. *See, e.g., First National City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 630, 103 S.Ct. 2591, 2601–02, 77 L.Ed.2d 46 (1983); *Anderson v. Abbott,* 321 U.S. 349, 363, 64 S.Ct. 531, 538, 88 L.Ed. 793 *reh'g*

*denied,* 321 U.S. 804, 64 S.Ct. 845, 88 L.Ed. 1090 (1944); *Taylor v. Standard Gas & Electric Co.,* 306 U.S. 307, 322, 59 S.Ct. 543, 550, 83 L.Ed. 669 (1939).

**4.** The Court, of course, may be required to revisit the forfeitability of assets held in Investments' name if a third party properly raises the issue in a petition filed pursuant to 18 U.S.C. § 1963(*l*).

which are enumerated on the "Second Supplemental List of Forfeited Property" attached hereto. In the case of each bank account appearing on the "Second Supplemental List of Forfeited Property," the United States Marshals Service is directed to seize the property *forthwith*. In the case of the claim in bankruptcy appearing under the heading "Esanu Katsky Korins & Siger" on the "Second Supplemental List of Forfeited Property," the United States Marshals Service is directed to inform the bankruptcy trustee, Mr. Joel Weiss of Esanu Katsky Korins & Siger of New York, New York, of the manner in which any distribution from the bankruptcy estate to BCCI shall be transferred to the United States Marshals Service.

It is FURTHER ORDERED that upon receipt of notice from the United States Marshals Service that the property has been seized, it shall be the responsibility of the United States of America to notify all interest parties by fastest means available of their right to file a claim pursuant to 18 U.S.C. § 1963(*l*) asserting legal right, title or interest in the property.

IT IS SO ORDERED.

### Second Supplemental List of Forfeited Property

| Account No. | Account Name | Approx. Balance |
|---|---|---|
| ** Bank of California Corp. | | |
| 91–212373–1121 | BCCI (Overseas) Chittigong | 398,724.15 |
| 91–209411–1121 | BCCI (Overseas) Dhaka | 3,155,691.38 |
| 91–212399–1121 | BCCI (Overseas) Sri Lanka | 84,930.45 |
| 91–212407–1121 | BCCI (Overseas) Sri Lanka | 420,947.93 |
| ** Subtotal ** | | |
| | | 4,060,293.91 |
| | | |
| ** Bank of New York | | |
| Suspense | BCCI (Overseas) Kenya | 30,238.40 |
| 180676 | ICIC (Overseas) Ginnie Mae Book Entry | 118,708.66 |
| 180676 | ICIC (Overseas) Ginnie Mae interest distributions | 9,489.09 |
| 180676 | ICIC (Overseas) | 527,592.32 |
| 180650 | ICIC Investments Ltd. | 14,534,639.16 |
| ** Subtotal ** | | |
| | | 15,220,667.63 |
| | | |
| ** Bear Stearns & Co., Inc. | | |
| 055–69205 | ICIC Investments Ltd. | 34,376,678.00 |
| 089–69205 | ICIC Investments Ltd. | 514,845.00 |
| ** Subtotal ** | | |
| | | 34,891,523.00 |
| | | |
| ** Capital Bank | | |
| 0902205099 | BCCI (Overseas) Jamaica | 351,769.41 |
| 0902204203 | BCCI (Overseas) Paraguay | 639,404.78 |
| ** Subtotal ** | | |
| | | 991,174.19 |
| | | |
| ** Esanu Katsky Korins & Siger | | |
| | General Coffee Corp. claim in bankruptcy | 4,925,000.00 |

| Account No. | Account Name | Approx.<br>Balance |
|---|---|---|
| ** First American Bank, N.A. | | |
| 3–446–611 | BCCI Legal Fund | 68,919.87 |
| | | |
| ** First American Title Ins. Co. | | |
| Escrow Account | Amjad Awan<br>(Proceeds of sale of condo) | 140,478.46 |
| | | |
| ** Goldman, Sachs & Co. | | |
| 001–37937–9–911 | ICIC Investments Ltd. | 0.00 |
| 032–34066–3 | ICIC Investments Ltd. | 360,602.60 |
| ** Subtotal ** | | |
| | | 360,602.60 |
| | | |
| ** Mabon Securities Corp. | | |
| 04–4051 | ICIC Investments Ltd. | 20,240,717.09 |
| 46–0305 | ICIC Investments Ltd. | 452.50 |
| 46–2633 | ICIC Investments Ltd. | 0.00 |
| 48–2633 | ICIC Investments Ltd. | 0.00 |
| ** Subtotal ** | | |
| | | 20,241,169.59 |
| | | |
| ** Morgan Stanley & Co. | | |
| 0424245 | ICIC Investments Ltd. | 128,392.89 |
| 737–0120128947 | ICIC Investments Ltd. | 128,726.20 |
| ** Subtotal ** | | |
| | | 257,119.09 |
| | | |
| ** Oppenheimer & Co., Inc. | | |
| 05391180 | ICIC Investments Ltd. | 6,907,935.00 |
| 05391180 | ICIC Investments Ltd.<br>T-notes | 16,421,620.00 |
| ** Subtotal ** | | |
| | | 23,329,555.00 |
| | | |
| ** Prudential Securities, Inc. | | |
| TNT880170–85 | ICIC Investments Ltd. | 151.39 |
| | | |
| ** Security Pacific Int'l Bank | | |
| 04012039 | BCCI (Overseas) Manila | 443.00 |
| 03005016 | BCCI (Overseas) Paris | 1,225.00 |
| ** Subtotal ** | | |
| | | 1,668.00 |
| *** Total *** | | |
| | | $104,488,322.73 |