UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.

Crim.A. No. 91–0655 JHG.

United States District Court, District of Columbia.

Aug. 26, 1997.

U.S. Dept. of Justice, Asset Forfeiture Office, Stefan D. Cassella, Robert C. Dalton, for the Government.

Stephen B. Gillman. Andrew P. Tetzeli, Shutts & Bowen, Miami, FL, for Claimant.

*In re* **Third Round Petition of Banco Central Del Uruguay**

**MEMORANDUM OPINION AND ORDER**

JOYCE HENS GREEN, District Judge.

Presently pending is the United States' Motion to Dismiss ("Motion to Dismiss") the Verified Petition of Banco Central del Uruguay ("Banco Central"), which was filed pursuant to 18 U.S.C. § 1963(*l*) ("L–Claim"). The government has moved to dismiss the L–Claim due to lack of standing and for failure to state a claim. For the reasons expressed below, the Motion to Dismiss will be granted.

**BACKGROUND**

The facts surrounding BCCI's collapse are well known in the financial and legal communities, but certain facts bear repeating to set the stage for resolving the instant motion to

dismiss Banco Central's L–Claim.[1] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law. 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban Affairs of the United States House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5, 1991, banking regulators in the United Kingdom, Luxembourg and the United States, froze assets owned or controlled by BCCI. The assets were frozen in the United States included those at Capital Bank of Miami, which is relevant to the instant L–Claim. By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United States of America. *See* Transcript of Guilty Plea Proceedings at 7 (Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture.

Under paragraph 9 of the Plea Agreement and pursuant to the Order of Forfeiture, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates).

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, which directed immediate seizure of the specific assets listed therein.

The Plea Agreement also established the Worldwide Victims Fund and the U.S. Fund. Under the terms of the Plea Agreement, forfeited assets were to be disbursed in equal amounts to the Worldwide Victims Fund and the U.S. Fund. *See* Plea Agreement ¶ 1(c). The broad purpose of the Worldwide Victims Fund, operated by the Court–Appointed Fiduciaries, is to distribute funds "only to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the law of countries subscribing to recognized norms of international justice." *Id.* ¶ 14.

The purpose of the U.S. Fund is more specific, but no less compensatory. In addi-

---

1. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

tion to allowing for reimbursement of the costs of investigation and prosecution of BCCI, bank insurance and other matters, the U.S. Fund is also available to provide "restitution to victims of BCCI, which may include remission to the Court Appointed Fiduciaries in accordance with 18 U.S.C. § 1963(g) for the purpose of facilitating an increase in assets available for distribution by the Court–Appointed Fiduciaries to innocent worldwide victims of BCCI, and which may include claims related to the failure of Cen-Trust, if any." *Id.* ¶ 12(f). As a result of BCCI's guilty plea and the subsequent criminal forfeiture proceedings, by July 1996, the United States had "recovered nearly $800 million, virtually all of which has been, or will be, distributed to the victims of the fraud." Testimony of Stefan Cassella before the Judiciary Committee of the House of Representatives (July 22, 1996), 1996 WL 410099, *5 (F.D.C.H.).[2]

The Court later amended the Order of Forfeiture to include additional assets, including property set forth in Second and Third Supplemental Lists of Forfeited Property. *See* Order of Forfeiture of July 29, 1992 (Second Order of Forfeiture); Order of Forfeiture of August 19, 1993 (Third Order of Forfeiture). Attached to the Third Order of Forfeiture, which is relevant to the L–Claim presently before the Court, was the Third Supplemental List of Forfeited Property aggregating $101,302,465.54 and including the funds credited to account # 0902205153, in the name of BCC Credit and Finance (Uruguay), S.A. ("BCC Uruguay") at Capital Bank, which is the account that Banco Central now seeks.

On May 10, 1993, the government filed a motion for a Third Order of Forfeiture. See Docket No. 746. In relevant part, that motion provided: "After investigation, the government has determined that BCC Trinidad & Tobago, BCCI Brazil, and BCC Uruguay were subsidiaries of BCCI Holdings (Luxembourg), S.A. and that, in light of the relation-

ship between those subsidiaries and the convicted defendants, the assets are subject to forfeiture." *Id.* at 9–10 (citing Dalton Decl. at 8–11, 19–20). In sum, the government contended that BCC Uruguay was a wholly owned subsidiary of BCCI and, as such, was controlled to such a degree that this Court should disregard the corporate form. Upon reviewing the government's motion and supporting attachments, the Court found the evidence satisfactory (at least as to BCC Uruguay) and granted the motion. In entering the Third Order of Forfeiture, this Court expressly stated that "[f]or the reasons set forth in the government's motion and the accompany. declarations and exhibits, the Court finds that all property listed in the government's proposed Third Supplemental List, *except property held by BCC (Misr) S.A.E.*, is the property of the corporate defendants." Third Order of Forfeiture at 2 (emphasis in original, footnote omitted). As to BCC (Misr) S.A.E., the Court rejected the government's offer of proof, concluding that the government had not yet satisfactorily established that BCC (Misr), a separately incorporated entity, was the *alter-ego* of the defendants. *Id.* at 2 n. 1. The Court made no such finding with respect to BCC Uruguay and therefore forfeited to the United States the account held in the name of BCC Uruguay at Capital Bank in Miami. *See id* at Ex. A, page 1 (account # 0902205153 in the amount of US$375,728.87).

In compliance with 18 U.S.C. § 1963(*l*)(1) and to inform third parties of their potential rights to seek recovery of assets declared forfeited in the Third Order of Forfeiture, the United States published notice of the Order of Forfeiture, as amended, during the period September 3, 1993, and September 27, 1993 in eleven major newspapers including the *Wall Street Journal,* the *New York Times,* the *Chicago Tribune,* the *Los Angeles Daily Journal,* the *Washington Post,* and the *International Herald Tribune.* *See* United States' Notice to the Court (filed Sept. 21,

---

**2.** In 1995, over $225 million was disbursed to the Court Appointed Fiduciaries for the Worldwide Victims Fund. *See* Notice to the Court at I (filed Aug. 13, 1996). On August 1, 1996, the United States disbursed an additional $83,651,-863.24, *id.* at 2, and, on May 22, 1997, Attorney

General Janet Reno "determined that the United States would transfer 100 percent of its share of ·the forfeited funds to the Worldwide Victims Fund so that the funds might be distributed to all BCCI victims equally on a pro rata basis." Notice to the Court at 2 (filed July 11, 1997).

1993). In addition, personal notice was sent to over 523 persons and entities. *Id.* at Ex. 2, at 11. In response, the Banco Central filed the instant petition.

Banco Central claims an interest in the forfeited account and, for the purposes of this motion, the Court assumes true the facts pled in its Verified Petition. Banco Central is the financial and monetary authority of the Republic of Uruguay. L–Claim at 2. BCC Uruguay was a financial institution formed and operating under the laws of Uruguay and which was subject to the regulatory authority of Banco Central. *Id.* On July 8, 1991, Banco Central intervened and took over the operations of BCC Uruguay; BCC Uruguay is no longer-in operation but exists solely for the purposes of liquidation. *Id.* Consequently, and under the law of Uruguay, Banco Central is entitled to exercise and pursue any and all legal rights of BCC Uruguay, which was not a named defendant in the underlying criminal case. *Id.*

The United States has moved to dismiss Banco Central's petition on the grounds of standing and failure to state a claim. Banco Central filed a brief in opposition but did not request oral argument or appear at the hearing offered to all Third Round claimants.

## DISCUSSION

BCCI's assets were forfeited pursuant to 18 U.S.C. § 1963,[3] which sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18 U.S.C. § 1963(*l*)(2).[4] Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this-section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

18 U.S.C. § 1963(*l*)(6).

A petitioner must first establish standing. Only by establishing standing and alleging the requisite elements of either § 1963(*l*)(6)(A) or § 1963(*l*)(6)(B) may a par-

---

3. 18 U.S.C § 1963(a) provides, in relevant part:

> Whoever violates any provision of section 1962 of this chapter shall ... forfeit to the United States, irrespective of any provision of State law—
>
> (1) any interest the person has acquired or maintained in violation of section 1962,
>
> (2) any—
>
> (A) interest in;
>
> (B) security of;
>
> (C) claim against; or
>
> (D) property or contractual right of any kind affording a source of influence over;
>
> any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
>
> (3) any property constituting, or derived from, any proceeds which the person has ob-

tained directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

> The court, in imposing sentence on such person shall order ... that the person forfeit to the United States all property described in this subsection.

4. This provision provides:

> Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

ty obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of American Express Bank)*, 941 F.Supp. 180, 184 (D.D.C.1996); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of BCCI(O) Foreign Branches)*, 833 F.Supp. 32, 36 (D.D.C. 1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Chawla)*, 833 F.Supp. 9, 13 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United States v. Schwimmer*, 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin*, 942 F.2d 177, 187 (3rd Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See In re Petition of Chawla*, 833 F.Supp. at 13; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir. 1988); *United States v. Mageean*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir.1987).

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) may be granted if it appears that the petitioner can prove no facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kenneda v. United States*, 880 F.2d 1439, 1442 (D.C.Cir.1989). The Court assumes true well-pleaded facts and construes the complaint liberally, granting a petitioner the benefit of any reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications*, 16 F.3d 1271, 1275 (D.C.Cir.1994).

Section 1963(*l*)(2) requires a party to assert "a legal interest in property forfeited to the United States" to have standing. This requirement is imposed to further the purpose of an L–Claim proceeding, which, while ancillary to the underlying criminal case, is intended to ensure that property forfeited to the United States was that of the defendant; it does not attempt to divide the defendant's estate among competing claimants. *See United States v. BCCI Holdings (Luxembourg), S.A. (In re Petitions of General Creditors)*, 814 F.Supp. 106, 110 (D.D.C.1993). This latter task is properly performed at a liquidation proceeding, where all parties without a "legal interest" in forfeited property can recover on a pro rata basis with the many other claimants to the debtor's estate. *Id.* at 111; *see Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754 (10th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *First Empire Bank–New York v. F.D.I.C.*, 572 F.2d 1361 (9th Cir.1978), *cert. denied*, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

The critical inquiry in an L-proceeding is, therefore, ownership of the disputed funds. As recognized by this Court and most, if not all, other courts addressing the issue, an unsecured creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See In re Petition of Chawla*, 46 F.3d at 1191; *see also Schwimmer*, 968 F.2d at 1581; *Campos*, 859 F.2d at 1240; *United States v. Reckmeyer*, 836 F.2d 200, 206 & n. 3 (4th Cir.1987); *Mageean*, 649 F.Supp. at 828. Because a general creditor is unable to assert an interest in a specific asset, it cannot assert a legal right, title, or interest "in property which has been ordered forfeited" as required by § 1963(*l*)(2), at least in situations where, like here, a defendant's entire estate is not subject to forfeiture. *In re Petition of Chawla*, 46 F.3d at 1191; *see Reckmeyer*, 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest ... forfeitures."). Accordingly, absent a showing of an interest in a specific asset, the petitioners would lack

standing to assert a claim in these L-proceedings.

■ In its motion to dismiss, the United States argues that Banco Central has not offered sufficient facts to demonstrate standing. As authority, the government relies upon this Court's previous decisions, in which the Court ruled that a related but separately-incorporated entity was the *alter-ego* of one of the corporate defendants, *see United States v. BCCI Holdings (Luxembourg), S.A. (In re ICIC)*, 795 F.Supp. 477 (D.D.C.1992) (in issuing Second Order of Forfeiture, finding that ICIC Investments Ltd. was the *alter-ego* of Defendant ICIC (Overseas) Limited), and case in which the Court held that the liquidators of foreign BCCI branches lacked standing in L-Claim proceedings. *See In re Petition of BCCI(O) Foreign Branches*, 833 F.Supp. 32, 39 (D.D.C.1993) (ruling that unincorporated foreign branches of BCCI were not separate entities for the purpose of indictment and therefore lack standing in L-Claim proceedings), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995).

In response, Banco Central contends that BCC Uruguay is an entity separate and distinct from the corporate defendants. Opp. at 4. According to Banco Central, the Third Order of Forfeiture was based on an implicit finding that BCC Uruguay was the *alter-ego* of the corporate defendants. *Id.* Moreover, prior to issuance of the Third Order of Forfeiture, there was no "opportunity to appear, to present evidence, or in any way to contest any facts or findings which could be said to have led to or supported the [Court's] implicit finding." *Id.* In attempting to distinguish *In re ICIC*, Banco Central points to footnote 4 of that ruling, which states: "The Court, of course, may be required to revisit the forfeitability of assets held in [ICIC's] name if a third party properly raises the issue in a petition filed pursuant to 18 U.S.C. § 1963(*l* )." 795 F.Supp. at 480 n. 4.

Examined in this light, the government's motion will be granted, and the petitioner's L-Claim will be dismissed.[5] Banco Central correctly points to *In re ICIC* for the proposition that this Court will revisit issues related to the forfeitability of assets involving an *alter-ego* finding "if a third party properly raises the issue." 795 F.Supp. at 480 n. 4. The problem for Banco Central is clear: the Court has previously (albeit subject to reconsideration if appropriate) determined that evidence supports a finding that BCC Uruguay was an *alter-ego* of the corporate defendants and, in its petition, Banco Central has pled no facts to the contrary (which would have been assumed to be true) or which are sufficient to properly raise the issue. To dispel petitioner's misapprehension regarding the Order of Forfeiture; the Court's earlier finding was not implicit; the Court did not grant the government's motion and enter the Order of Forfeiture without reviewing carefully the basis therefore. As reflected in the case of one entity, the Court rejected the government's *alter-ego* argument where it was not adequately supported. However, this was *not* the case with respect to BCC Uruguay.

In any event, rather than amending its L-Claim by adding sufficient facts, Banco Central merely argues, ***in its brief opposing the motion to dismiss,*** that BCC Uruguay was "separate and distinct from the corporate defendants." Opp. at 4. While it is not entirely clear whether the petitioner is contending that it has standing merely because BCC Uruguay was separately incorporated from BCCI or whether it is attempting deny that BCC Uruguay was an *alter-ego* of BCCI, neither argument is persuasive. As to the first, corporate separateness alone is insufficient to establish standing where the assets were ordered forfeited based upon an *alter-ego* finding; the Court was aware of BCC Uruguay's separate incorporation at the time the finding was made. And, as to the second, Banco Central has simply not pled sufficient facts to "properly raise[ ] the issue," *In*

---

5. It is not entirely clear whether Banco Central is asserting its L-Claim on its own behalf as a liquidator of BCC Uruguay or on behalf of BCC Uruguay. However, it is unnecessary to decide because Banco Central's petition would be dismissed either way. Neither an *alter-ego* of a corporate defendant nor the liquidator of such *alter-ego* would have standing to file an L-Claim in this proceeding.

*re ICIC,* 795 F.Supp. at 480 n. 4, and thereby establish standing under 18 U.S.C. § 1963(*l* )..

Banco Central's implicit suggestion that it (or BCC Uruguay, as the case may be) has been denied due process is similarly unpersuasive. *See* Opp. at 2 & 4. As the petitioner notes, *see id.* at 3 (citing footnote 4 of *In re ICIC),* this Court is completely open to consider claims challenging the sufficiency of a forfeiture based upon a previous *alter-ego* finding. However, the petitioner must allege facts that raise, or are subject to a reasonable inference that raises, a dispute regarding that previous *alter-ego* finding. This, Banco Central has not done.

Accordingly, the government's motion will be granted.

## CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the government's Motion to Dismiss Banco Central's L–Claim is **GRANTED.** The L–Claim is dismissed. Judgment shall be entered separately in accordance with Fed.R.Civ.P. 58.

IT IS SO ORDERED.

### *In re* **Third Round Petition of Banco Central Del Uruguay**

### JUDGMENT

In accordance with the Memorandum Opinion and Order issued this date and pursuant to Fed.R.Civ.P. 58, judgment is hereby entered in favor of the United States and against Petitioner Banco Central Del Uruguay.

IT IS SO ORDERED.