**UNITED STATES of America**

v.

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.**

Crim. A. No. 91–0655 JHG.

United States District Court, District of Columbia.

Feb. 23, 1998.

which addressed very similar issues, applied a similar analysis and reached the same conclusion as this court does.

MEMORANDUM OPINION AND ORDER

GREEN, District J.

### In re Fifth Round Mistaken Wire Transfer Petitioners

Presently before the Court is the United States' motion for clarification or reconsideration of the Court's August 26, 1997 Memorandum Opinion and Order *In re Fifth Round Mistaken Wire Transfer Petitioners*, 1997 WL 695668. The Government's motion is directed only to the Court's denial of the Government's motion to dismiss the petition of Bank Austria (AG) ("Bank Austria"). Because, as the Government now concedes, the funds at issue are not subject to forfeiture to the United States under this Court's Order of Forfeiture, 1992 WL 100334, the L–Claim petition of Bank Austria shall be dismissed, the Fifth Order of Forfeiture shall be amended to exclude the funds sought by Bank Austria, and the United States is directed to file a proposed order with respect to the transfer of the funds.

### BACKGROUND

The facts surrounding BCCI's collapse are well known in the financial and legal communities, but certain facts bear repeating to set the stage for resolving the instant motion for clarification or reconsideration.[1] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law. 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban Affairs of the United States

Gerald E. McDowell, Chief, Asset Forfeiture and Money Laundering Section, U.S. Dept of Justice, Stefan D. Cassella, Assistant Chief, Washington, DC, for the U.S.

Dwight D. Meier, Ginsburg, Feldman and Bress, Washington, DC, William M. Barron, Walter, Conston, Alexander & Green, P.C., New York City, for Bank Austria.

---

1. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5, 1991, banking regulators in the United Kingdom, Luxembourg and the United States, froze assets owned or controlled by BCCI. In New York, the Superintendent of Banks seized BCCI's assets at various New York banks, including those at the Bank of New York ("BNY") and Security Pacific Bank ("SPB"). By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United States of America. *See* Transcript of Guilty Plea Proceedings at 7 (Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture, 1992 WL 100334.

Under paragraph 9 of the Plea Agreement and pursuant to the Order of Forfeiture, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates).

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, 1992 WL 34142, which directed immediate seizure of the specific assets listed therein. The Court later amended the Order of Forfeiture to include additional assets, including property set forth in Second, Third, Fourth and Fifth Supplemental Lists of Forfeited Property. *See United States v. BCCI Holdings (Luxembourg) S.A.*, 795 F.Supp. 477 (D.D.C.1992) (Order of Forfeiture of July 29, 1992 (Second Order of Forfeiture)); Order of Forfeiture of August 19, 1993 (Third Order of Forfeiture); Fourth Order of Forfeiture (December 21, 1994); Fifth Order of Forfeiture (September 20, 1996). Attached to the Fifth Order of Forfeiture, which is relevant to the petitioners' L–Claims presently before the Court, was the Fifth Supplemental List of Forfeited Property.

The Plea Agreement also established the Worldwide Victims Fund and the U.S. Fund. Under the terms of the Plea Agreement, forfeited assets were to be disbursed in equal amounts to the Worldwide Victims Fund and the U.S. Fund. *See* Plea Agreement ¶ 11(c). The broad purpose of the Worldwide Victims Fund, operated by the Court–Appointed Fiduciaries, is to distribute funds "only to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the law of countries subscribing to recognized norms of international justice." *Id.* ¶ 14.

The purpose of the U.S. Fund is more specific, but no less compensatory. In addition to allowing for reimbursement of the costs of investigation and prosecution of BCCI, bank insurance and other matters, the U.S. Fund is also available to provide "restitution to victims of BCCI, which may include remission to the Court Appointed Fiduciaries

in accordance with 18 U.S.C. § 1963(g) for the purpose of facilitating an increase in assets available for distribution by the Court–Appointed Fiduciaries to innocent worldwide victims of BCCI, and which may include claims related to the failure of Cen Trust, if any." *Id.* ¶ 12(f). As a result of BCCI's guilty plea and the subsequent criminal forfeiture proceedings, by July 1996 the United States had "recovered nearly $800 million, virtually all of which has been, or will be, distributed to the victims of the fraud." Testimony of Stefan Cassella before the Judiciary Committee of the House of Representatives (July 22, 1996), 1996 WL 410099, *5 (F.D.C.H.).[2]

In compliance with 18 U.S.C. § 1963(*l*)(1) and to inform third parties of their potential rights to seek recovery of assets declared forfeited in the Fifth Order of Forfeiture, the United States published notice of the Order of Forfeiture, as amended, during the period from November 15, 1996 through December 23, 1996, in eleven major newspapers of general circulation including the *Wall Street Journal,* the *New York Times,* the *International Herald Tribune,* the *Los Angeles Daily Journal,* the *Washington Post,* and *USA Today. See* United States' Notice to the Court at 1 & Exhibit A (Docket No. 1800). In addition, personal notice was sent to 163 persons and entities. *Id.* Through a timely filed Fifth Round L–Claim, Bank Austria asserted interests in forfeited property. The United States moved to dismiss, *inter alia,* the petition of Bank Austria. On August 26, 1997, this Court denied the motion as to Bank Austria. *See In re Fifth Round Mistaken Wire Transfer Petitioners,* 1997 WL 695668 at *7. Thereafter, the United States filed its motion for clarification or reconsideration.

## DISCUSSION

The Government's motion does not take issue with the Court's August 26th opinion so much as it seeks to clarify the consequences of its own concession and the Court's finding, based on undisputed facts, that Bank Austria's wire transfers to BCCI were not completed until after the date of BCCI's conviction.

Rather than responding to the merits, Bank Austria opposes the Government's motion only on procedural grounds that are inapplicable. Bank Austria argues that the Government's motion was two days too late to be considered a timely motion under Fed. R.Civ.P. 59(e) and does not qualify as a motion under Fed.R.Civ.P. 60(b). However, the text of the rules and the discussion regarding finality of judgments in the cases on which Bank Austria relies, makes clear that those two rules apply to a "judgment" or "final order" of the Court. *See Derrington–Bey v. District of Columbia Dept. of Corrections,* 39 F.3d 1224, 1225–26 (D.C.Cir.1994); *Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Comm'n,* 781 F.2d 935, 941 (D.C.Cir.1986). This Court's August 26th denial of the Government's motion to dismiss is neither, and it is clear that the Court is free to clarify her interlocutory rulings. *See* Fed.R.Civ.P. 60(b) advisory committee's note (1946 amendment) ("[I]nterlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."). Even if one were to construe the denial of a motion to dismiss as a "final" order, the Government's motion would be properly considered under Rule 60(b). On to the merits.

BCCI's assets were forfeited pursuant to 18 U.S.C. § 1963, which sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18

---

**2.** In 1995, over $225 million was disbursed to the Court Appointed Fiduciaries for the Worldwide Victims Fund. *See* Notice to the Court at 1 (filed Aug. 13, 1996). On August 1, 1996, the United States disbursed an additional $83,651,863.24, *id.* at 2, and, on May 22, 1997, Attorney General Janet Reno "determined that the United States would transfer 100 percent of its share of the forfeited funds to the Worldwide Victims Fund so that the funds might be distributed to all BCCI victims equally on a pro rata basis ." Notice to the Court at 2 (filed July 11, 1997).

U.S.C. § 1963(*l*)(2). Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
>> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>>
>> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

18 U.S.C. § 1963(*l*)(6).

■ As should be clear, an L–Claim proceeding is designed to adjudicate a third party's claims to property that is subject to forfeiture under § 1963. With regard to such property, the petitioner must establish standing. Only by establishing standing and alleging the requisite elements of either § 1963(*l*)(6)(A) or § 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture.[3] If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing.[4]

A motion to dismiss may be granted if it appears that the petitioner can prove no facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 , 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kenneda v. United States*, 880 F.2d 1439, 1442 (D.C.Cir.1989). The Court accepts well-pleaded facts as true and construes the complaint liberally, granting a petitioner the benefit of any reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications*, 16 F.3d 1271, 1275 (D.C.Cir.1994).

According to its petition, Bank Austria, formerly known as Z–Laenderbank Bank Austria, is a corporation organized and operating under the laws of Austria. The petitioner seeks sums in the amounts of $1,208 and $35,360.10, which represent credits to accounts once held in BCCI accounts at SPB in New York. Bank Austria alleges that, on January 22, 1992, on behalf of a customer, its Salzburg office issued a payment order through BCCI Limosol Branch, Cyprus ("BCCI Cyprus") in favor of beneficiary BOMO Paper Ltd., Paphos, Cyprus. BCCI Cyprus maintained an account in New York with SPB. Consequently, Bank Austria effected the wire transfer by instructing its New York correspondent, Chase Manhattan Bank, to debit its account in the amount of $35,360.10, transferring an equivalent credit to BCCI Cyprus at SPB. On January 27, 1992, the wire transfer was completed, and SPB credited BCCI Cyprus' account. However, BCCI Cyprus failed to pay the beneficiary due to the intervention of banking reg-

---

**3.** *See United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Pacific Bank)*, 956 F.Supp. 5, 10 (D.D.C.1997); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of BCCI Foreign Branches)*, 833 F.Supp. 32, 36 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Chawla)*, 833 F.Supp. 9, 13 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160,

115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United States v. Schwimmer*, 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin*, 942 F.2d 177, 187 (3rd Cir.1991).

**4.** *See In re Petition of Pacific Bank*, 956 F.Supp. at 10; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir. 1988); *United States v. Mageean*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir.1987).

ulators freezing BCCI's accounts in the United States over six months earlier.

Similarly, on February 5, 1992, on behalf of a customer, Bank Austria ordered its correspondent in New York, again Chase Manhattan Bank, to transfer $1,208.00 from its account to the SPB account of BCCI Amman, Jordan ("BCCI Jordan") in favor of certain beneficiaries in Amman. This funds transfer to BCCI Jordan's account at SPB was completed on February 18, 1992. But, as before, BCCI failed to pay the designated beneficiaries.

Only after these wire transfers were effected did Bank Austria realize that BCCI's accounts in New York had been frozen since early July 1991. Although it requested that the payments be refunded, SPB advised Bank Austria that it could not refund the sums and New York State banking regulators rejected the request.

■ Bank Austria's L–Claim petition is examined under Article 4–A of the New York Uniform Commercial Code ("N.Y.U.C.C.") and the law applicable to standing and criminal forfeiture. It is undisputed that each of the two wire transfers to BCCI was effected pursuant to a valid payment order, and it cannot be disputed that BCCI, as the beneficiary's bank for each of the transactions, accepted the funds when its accounts were credited. N.Y.U.C.C. § 4–A–209(2). As a matter of law, title to the funds passed to BCCI when the funds transfer was completed. *Id.* § 4–A–104(1); *see Shawmut Worcester County Bank v. First American Bank & Trust,* 731 F.Supp. 57, 60 (D.Mass.1990). Pursuant to Article 4A, BCCI, however improperly, acquired an ownership interest in the funds and Bank Austria became a mere claimant to those funds. *United States v. BCCI Holdings (Luxembourg) S.A., et al., (In re Mistaken Wire Transfer Petitioners),* 1994 WL 914460 *5 (D.D.C., Oct. 28, 1994); *see also In re Petition of Pacific Bank,* 956 F.Supp. at 11.

■ BCCI acquired title when the payment orders were executed as Bank Austria intended, which was not until *after* the defendants were convicted and the Order of Forfeiture (entered on January 24, 1992) "The

trigger for forfeiture is conviction [and] the defendants forfeited all of their interests in the enterprise that existed upon their conviction on January 24, 1992." *In re Petition of Pacific Bank,* 956 F.Supp. at 12. Assuming true the facts alleged for the purposes of this motion, if Bank Austria's transfers were not, in fact, effected until January 27, 1992, and February 5, 1992, the property Bank Austria seeks to recover was not subject to forfeiture since it was acquired by the defendants after the date of conviction. The Order of Forfeiture did not, as Bank Austria points out, extend to "after acquired" property. Indeed, the United States, which placed the property on the Fifth Supplemental List of Forfeited Property, now concedes that this property was not subject to forfeiture. Gov't Mem. at p. 6.

Contrary to the Government's suggestion, the Court has not shifted its standing inquiry with respect to L–Claim petitions. What makes Bank Austria's L–Claim different from the others is that on the undisputed facts of this case, it is clear that the property at issue is not subject to forfeiture to the United States. Therefore, whatever claims Bank Austria may have to the funds, those claims are not properly asserted in an L–Claim proceeding, which is designed to adjudicate third parties' interests in property that is subject to forfeiture. For that reason, Bank Austria's L–Claim must be dismissed and the Fifth Order of Forfeiture must be amended to exclude the funds at issue.

■ However, that does not mean that the funds should be transferred to Bank Austria. While the completion dates of the wire transfers made the funds not subject to forfeiture to the United States, that does not change the fact that upon completion of the transfers, the funds became part of the general deposits of BCCI, and Bank Austria became a general depositor. *See United States v. BCCI Holdings (Luxembourg) S.A., et al., (In re Petitions of General Depositors),* 814 F.Supp. 106, 109–10 (D.D.C.1993). Upon completion of the transfer, the beneficiary bank (BCCI) acquired ownership of the funds, and Bank Austria acquired a cause of action. *See id.* Such a cause of action is not

**24**

a "legal interest" in the forfeited property, but rather an unsecured claim against the estate of the bank. *Id.* As a result, neither Bank Austria nor the United States is entitled to possession of the funds at this time.

### CONCLUSION

For the reasons stated, it is hereby

**ORDERED** that the L–Claim Petition of Bank Austria is DISMISSED with prejudice; and it is

**FURTHER ORDERED** that the Court's Fifth Order of Forfeiture is amended to the extent that the funds in the amount of $35,-360.10 and $1,208.00 (and all interest accrued thereon), listed as item #17 under Bank Austria's former name, Z–Laenderbank, on the "Schedule of Mistaken Funds Transfer Claims in New York Liquidation" appended to the Fifth Order of Forfeiture are excluded from the property ordered forfeited to the United States. And it is

**FURTHER ORDERED** that the United States is directed to submit a proposed order of transfer **not later than March 6, 1998** as to the exact amount (including interest) that should be transferred, specifying how, when and where the funds are to be transferred.

IT IS SO ORDERED.