**UNITED STATES of America**

v.

U.S. Department of Justice, Asset Forfeiture Office, Stefan D. Cassella, Latrena Carrington, for the Government.

B. Jay Baraff, Baraff, Koerner, Olender & Hochberg, P.C., for Defendants.

### *In re* First Round Petition of State Trading Organization, Republic of the Maldives

### *MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

Presently before the Court is the United States' motion to dismiss the First Round Petition of the State Trading Organization of the Republic of the Maldives ("STO"), which was filed pursuant to 18 U.S.C. § 1963(*l*) (1994) ("L–Claim"). For the reasons staged below, the motion to dismiss will be granted, and the L–Claim will be dismissed.

#### Background

The facts surrounding BCCI's collapse are well known in the financial and legal communities, but certain facts bear repeating to set the stage for resolving the motion to dismiss STO's L–Claim.[1] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law. 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban

---

1. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

Affairs of the United States House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5.1991, banking regulators in the United Kingdom, Luxembourg and the United States, froze assets owned or controlled by BCCI. In New York, the Superintendent of Banks seized BCCI's assets at various New York banks, including those at the Bank of California. By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United States of America. See Transcript of Guilty Plea Proceedings at 7 (Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture.

Under paragraph 9 of the Plea Agreement, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates). Attached to the First Order of Forfeiture, as amended, was a list of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Included among the assets seized pursuant to the amended order was BCCI(O) Male branch's account at Bank of California (No. 91–212381–1121) with a balance of US$1,283,-092.84 (hereinafter, the "forfeited account").

The Plea Agreement also established the Worldwide Victims Fund and the U.S. Fund. Under the terms of the Plea Agreement, forfeited assets were to be disbursed in equal amounts to the Worldwide Victims Fund and the U.S. Fund. See Plea Agreement ¶ 11(c). The broad purpose of the Worldwide Victims Fund, operated by the Court–Appointed Fiduciaries, is to distribute funds "only to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the law of countries subscribing to recognized norms of international justice." Id. ¶ 14.

The purpose of the U.S. Fund is more specific, but no less compensatory. In addition to allowing for reimbursement of the costs of investigation and prosecution of BCCI, bank insurance and other matters, the U.S. Fund is also available to provide "restitution to victims of BCCI, which may include remission to the Court Appointed Fiduciaries in accordance with 18 U.S.C. § 1963(g) for the purpose of facilitating an increase in assets available for distribution by the Court–Appointed Fiduciaries to innocent worldwide victims of BCCI, and which may include claims related to the failure of Cen-Trust, if any." Id. ¶ 12(f). As a result of BCCI's guilty plea and the subsequent criminal forfeiture proceedings, by July 1996 the United States had "recovered nearly $800 million, virtually all of which has been, or will be, distributed to the victims of the fraud." Testimony of Stefan Cassella before the Judiciary Committee of the House of Representatives (July 22, 1996), 1996 WL 410099, *5 (F.D.C.H.).[2]

---

2. In 1995, over $225 million was disbursed to the Court Appointed Fiduciaries for the Worldwide Victims Fund. See Notice to the Court at 1 (filed Aug. 13, 1996). On August 1, 1996, the

For the purposes of this motion to dismiss, the Court assumes true the facts alleged by STO. On June 11, 1991, Chotiwat Manufacturing Co., Ltd. ("Chotiwat") in Thailand applied for a letter of credit in connection with the sale of frozen fish by Petitioner STO. The letter of credit was issued by Siam City Bank in Thailand, on behalf of Chotiwat, in favor of STO as beneficiary. BCCI(O) Male branch advised the letter of credit. STO completed its contractual obligations and, on June 29, 1991, pursuant to the terms of the letter of credit, STO submitted the required documents to BCCI(O) Male branch for negotiation.[3]

On July 5, 199 1, Siam City Bank issued a payment order to its correspondent, Manufacturers Hanover Trust Co. ("Manufacturers"), directing that its account be debited in the amount of $966,774.53, "under instructions to forward said funds through BCCI to the account of [STO] with the State Bank of India branch in Male." STO's Opp. at 2–3. Manufacturers then instructed the Bank of California (also in New York) to debit its account in the requested amount and credit BCCI(O) Male's account number 91–212381–1121. The Bank of California complied, issuing a payment order and crediting BCCI(O)'s Male account accordingly. However, due to the intervention of banking regulatory authorities on July 5, 1991. BCCI(O) Male's never transferred the funds to the State Bank of India. Petitioner STO alleges that the Bank of California credited BCCI(O) Male's account, but only after banking authorities intervened and froze BCCI's assets, including those held by the Bank of California.

After this Court entered the First Order of Forfeiture, and the amendment several days later which included the forfeited account at the Bank of California, the United States provided notice by publication and by letter to potential claimants of which it was aware. Through a timely filed L–Claim, STO asserted an interest in the amount due pursuant to the Letter of Credit, US$966,774.53, which the Bank of California credited to BCCI(O)'s account. The United States later filed the instant motion, seeking dismissal on the grounds of standing and failure to state a claim upon which relief can be granted.

### Discussion

BCCI's assets were forfeited pursuant to 18 U.S.C. § 1963,[4] which sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18

---

United States disbursed an additional $83,651,-863.24, id. at 2, and, on May 22, 1997, Attorney General Janet Reno "determined that the United States would transfer 100 percent of its share of the forfeited funds to the Worldwide Victims Fund so that the funds might be distributed to all BCCI victims equally on a pro rata basis." Notice to the Court at 2 (filed July 11, 1997).

3. In relevant part, STO's letter of June 29, 1991, provided:

Please find enclosed our drafts along with relevant documents under the above Letter of credit.

| INVOICE NO | US $ VALUE |
|---|---|
| EXP/DMP/91/09 | 966,774.53 |

Kindly negotiate the sum and credit the proceeds to [State Bank of India,] New York Branch and further proceed (sic) to our A/C No. D 19 held with State Bank of India, Male under advise to us.

4. 18 U.S.C. § 1963(a) provides, in relevant part:

Whoever violates any provision of section 1962 of this chapter shall ... forfeit to the United States, irrespective of any provision of State law—
(1) any interest the person has acquired or maintained in violation of section 1962;
(2) any—
(A) interest in,
(B) security of,
(C) claim against, or
(D) property or contractual right of any kind affording a source of influence over,
any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962, and
(3) any property constituting, or derived from, any proceeds which the person has obtained directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
The court, in imposing sentence on such person shall order ... that the person forfeit to the United States all property described in this subsection.

U.S.C. § 1963($l$)(2).[5] Section 1963($l$)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
>> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>>
>> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

18 U.S.C. § 1963($l$)(6).

A petitioner must first establish standing. Only by establishing standing and alleging the requisite elements of either § 1963($l$)(6)(A) or § 1963($l$)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Pacific Bank)*, 956 F.Supp. 5, 10 (D.D.C.1997); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of BCCI(O) Foreign Branches)*, 833 F.Supp. 32, 36 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Chawla)*, 833 F.Supp. 9, 13 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United States v. Schwimmer*, 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin*, 942 F.2d 177, 187 (3rd Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See In re Petition of Pacific Bank*, 956 F.Supp. at 10; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir. 1987).

In resolving a motion to dismiss, the Court assumes true, as she must, the facts alleged by the petitioner in its L–Claim. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) may be granted if it appears that the petitioner can prove no facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kenneda v. United States*, 880 F.2d 1439, 1442 (D.C.Cir.1989). The Court construes the complaint liberally, granting a petitioner the benefit of any reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications*, 16 F.3d 1271, 1275 (D.C.Cir.1994).

Section 1963($l$)(2) requires a party to assert "a legal interest in property forfeited to the United States" to have standing. This requirement is imposed to further the purpose of an L–Claim proceeding, which, while ancillary to the underlying criminal case, is intended to ensure that property forfeited to the United States was that of the defendant;

---

5. This provision provides:

 Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

it does not attempt to divide the defendant's estate among competing claimants. *See United States v. BCCI Holdings (Luxembourg), S.A. (In re Petition of General Creditors)*, 814 F.Supp. 106, 110 (D.D.C.1993). This latter task is properly performed at a liquidation proceeding, where all parties without a "legal interest" in forfeited property can recover on a *pro rata* basis with the many other claimants to the debtor's estate. *Id.* at 111; *see Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754 (10th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *First Empire Bank–New York v. F.D.I.C.*, 572 F.2d 1361 (9th Cir.1978), *cert. denied*, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

 The critical inquiry in an L-proceeding is, therefore, ownership of the disputed funds. As recognized by this Court and most, if not all, other courts addressing the issue, an unsecured creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See In re Petition of Chawla*, 46 F.3d at 1191; *In re Petition of Pacific Bank*, 956 F.Supp. at 10; *see also Schwimmer*, 968 F.2d at 1581; *Campos*, 859 F.2d at 1240; *United States v. Reckmeyer*, 836 F.2d 200, 206 & n. 3 (4th Cir.1987); *Mageean*, 649 F.Supp. at 828. Because a general creditor is unable to assert an interest in a specific asset, it cannot assert a legal right, title, or interest "in property which has been ordered forfeited" as required by § 1963(1)(2), at least in situations where, like here, a defendant's entire estate is not subject to forfeiture. *In re Petition of Chawla*, 46 F.3d at 1191; *see Reckmeyer*, 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest ... forfei-

tures."). Accordingly, absent a showing of an interest in a specific asset, STO would lack standing to assert a claim in these L-proceedings.

 Determining whether STO has standing to assert its L–Claim requires application of the rules governing funds transfers, Article 4–A of the New York Uniform Commercial Code ("N.Y.U.C.C.").[6] In support of its position, the United States argues that once BCCI(O) Male branch accepted the payment order, title to the $966,774.53 at issue transferred to BCCI. *See* United States' Reply at 3–6;[7] Transcript of Hearing at 24–25. Alternatively, the United States contends that even if BCCI(O) did not accept the payment order, title remained with the Bank of California. Either way, according to the government, STO lacks a legal interest in the forfeited account and its petition must be dismissed. STO disputes the government's position, countering that title to the funds never vested in BCCI(O) Male branch because BCCI(O) never executed the payment order under N.Y.U.C.C. § 4–A–209(1); *See* STO's Opp. at 8–9; Transcript of Hearing at 32–34. Additionally, STO argues that once the banking regulatory authorities intervened, suspending payments by BCCI(O), all payment orders received thereafter were deemed rejected pursuant to N.Y.U.C.C. § 4–A–210(3). *See* STO's Opp. at 9, Transcript of Hearing at 34.

Accepting STO's alleged facts and examining them under Article 4–A as well as the law applicable to standing, it is clear that the L–Claim must be dismissed. Assuming *arguendo* that STO is correct that title to the funds never transferred from intermediary Bank of California to intermediary BCCI(O), as beneficiary to the funds transfer, STO nevertheless would lack standing in this proceeding.

On behalf of the originator Chotiwat, Siam City Bank, acting as the originator's bank,[8]

---

6. Because the wire transfer at issue occurred in New York, the N.Y.U.C.C. is the governing law.

7. Because STO's initial petition was ambiguous and appeared to base its claim on a letter of credit-beneficiary theory, the government's opening memorandum focused on letter of credit issues. After STO clarified in its opposition that it

was relying upon Article 4A of the U.C.C. and a wire-transfer theory, the government addressed those issues in its reply and at the Hearing.

8. As applicant, and through the Letter of Credit, Chotiwat directed Siam City Bank to send the first payment order in the funds transfer upon negotiation of the required documentation by

issued a payment order in favor of STO through its correspondent bank in New York, Manufacturers. As the bank identified in the payment order in which an account of the beneficiary was to be credited and the final bank in the chain, the State Bank of India was the beneficiary's bank. N.Y.U.C.C. § 4–A–103(1)(c); *see* 6B Hawkland, Uniform Commercial Code Series § 4A–103:03, at 33 (1993 & Cum.Supp.1996) ("[The beneficiary's bank] must be the final bank in the chain of banks receiving the payment orders forming the funds transfer."). STO was the entity to be paid by the State Bank of India, making it the beneficiary. N.Y.U.C.C. § 4–A–103(1)(b). The other banks involved in the funds transfer were "intermediary banks," which are defined as "receiving bank[s] other than the originator's bank or the beneficiary's bank." *Id.* § 4–A–104(2).

By failing either to execute the payment order or to refund payment, intermediary BCCI(O) was in breach of its obligations under Article 4–A. *See id* §§ 4–A–302 & 4–A–402. Accepting that BBCI(O) did not (or could not) execute the Bank of California's payment order, BCCI(O) would not have accepted the funds. *Id.* § 4–A–209(a). Consequently, title to those finds remained with intermediary Bank of California, which had executed Manufacturer's payment order. However, neither BCCI(O)'s failure to acquire title nor the breach of its obligations is sufficient to save STO's L–Claim from dismissal.

When a funds transfer is not completed, the intermediary bank receiving payment is obligated to refund payment to the sender. *Id.* § 4–A–402(e) & Official Comment 2. Unlike the debt BCCI(O) owed to the sender, it owed nothing to STO as the beneficiary since an intermediary bank has no legal obligation to the beneficiary. And, unlike the originating bank and other senders, STO simply never had title to the funds. STO, therefore, has neither a cause of action against BCCI(O) nor a claim of title to the specific funds.

STO's cause of action, if any, is against the originating bank, not BCCI. The prefatory notes discuss the allocation of risk in detail:

> If the originator's bank sends a payment order to the intermediary bank designated in the originator's order and the intermediary bank causes the funds transfer to miscarry, ... the originator's bank is not required to pay its payment order and if it has already paid, it is entitled to recover payment from the intermediary bank.... [I]f the originator's bank already paid its order and the intermediary bank has suspended payment or is not permitted by law to refund payment, the originator's bank will suffer a loss.

The risk of loss was clearly with the originator or the originator's bank. *See id.* § 4–A–402(e) & Official Comment 2. This makes sense in this case, since it is the originator's bank that issued the letter of credit which forms the basis for ISTO's claim.

■ Thus, it is clear that upon BCCI(O)'s breach, the originator's bank was left with a cause of action against BCCI(O)-although not a right to return of the specific funds.[9] Even if STO had a claim derivative of the originator bank's, such a claim could be no greater than the originator bank's general unsecured claim. *And,* it is the law of this Circuit that general creditors lack standing to assert claims under 18 U.S.C. § 1963(*l* ). *In re Petition of Chawla,* 46 F.3d 1185, 1191

---

Letter of Credit beneficiary STO. Thus, Chotiwat was the sender of the first payment order under N.Y.U.C.C. § 4–A–104(3), and Siam City Bank was the originator's bank. *Id.* § 4–A–104(4) (" 'Originator's bank' means (a) the receiving bank to which the payment order of the originator is issued if the originator is not a bank, or (b) the originator if the originator is a bank."). A "receiving bank" is the bank to which the sender's instruction is addressed, *id.* § 4–A–103(d), and a sender is a "person giving the instruction to the receiving bank." *Id.* § 4–A103(e); *see* 6B Hawkland, *supra* § 4A–103:04, at 33. Alterna-

tively, Siam City Bank could be construed as the sender of the first payment order, making it both the originator and the originator's bank.

**9.** The fact that the originating bank had a right to repayment does not, however, protect the sender when the intermediary bank becomes insolvent. Article 4–A provides that the risk of insolvency is borne either by the originator of the transaction or the originating bank, depending upon on the terms of the specific transaction. *See* N.Y.U.C.C. § 4–A–402 Official Comment 2.

(D.C.Cir.), *cert. denied sub nom. Chawla v. United States,* ––– U.S. –––, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). Moreover, the inability to assert a legal interest in a specific asset would undermine the petitioner's claim on the merits. *See, e.g., In re Petition of General Creditors,* 814 F.Supp. at 110–11.[10]

■ STO's attempt to save its L–Claim by arguing that it was the originator is unpersuasive. While STO alleges no such "fact" in its L–Claim, it offered this legal argument at the Hearing based on the fact that it forwarded the required documents and draft to Siam City Bank, thus triggering the wire transfer under the terms of the Letter of Credit. *See* Transcript of Hearing at 28 & 37–39. This argument fails for a number of reasons. Under Article 4–A–103(1)(e), the originator is the sender of the first payment order.[11] Because STO's instruction constituted a debit transfer (i.e., an instruction given by the person receiving payment), it was not a payment order within the meaning of Article 4–A. Debit transactions are expressly excluded from the scope of Article 4–A. *See* N.Y.U.C.C. § 4–A–104 Comment 4 ("Article 4A is limited to transactions in which the account to be debited by the receiving bank is that of the person in whose name the instruction is given."); id ("If [the transfer] is in the form of a debit transfer, it is not governed by Article 4A."); 6B Hawkland, *supra* § 4A–103:02, at 31 ("The debit of a customer's account caused by an instruction by a third party to transfer customer account funds to a third party would not fall within the scope of Article 4A."). Fry, *Basic Concepts in Article 4A: Scope and Definitions,* 45 Bus. Law. 1401, 1403–04, 14 10–11 & n. 47 (1990) ("For example, a supplier of goods might obtain authority from the purchaser to debit the purchaser's account when goods have been shipped. It would be possible to argue that an instruction to the purchaser's bank, initiated by the seller pursu-

ant to authority granted by the purchaser, was an 'an instruction of a sender to a receiving bank' transmitted to an agent for transmittal to the receiving bank within § 4A–103. The provision of subsection (2) requiring that the receiving bank is to be paid by the sender of the instruction ensures that such debit orders are excluded from the reach of Article 4A.") (footnotes omitted). While a beneficiary can be the originator of a transaction, this is only the case when transferring funds between its own accounts at the same or different banks. N.Y.U.C.C. § 4–A–104 Comment 2; 6B Hawkland, *supra* § 4A–103:03, at 33. Because its negotiation of documents pursuant to the Letter of Credit was, at most, a debit transfer not governed by Article 4–A, STO was not the originator.

■ Finally, STO's claim under § 1963(*l*)(6)(B) is similarly defective simply because STO purchased no property from BCCI(O), tangible or otherwise, *see United States v. BCCI Holdings (In re Petition of American Express Bank),* 961 F.Supp. 287, 295 (D.D.C.1997); *In re Petition of Pacific Bank,* 956 F.Supp. at 13–14; *United States v. BCCI Holdings (Luxembourg), S.A. (In re Petitions of Trade Creditors),* 833 F.Supp. 22, 28 (D.D.C.1993), *aff'd,* 48 F.3d 551 (D.C.Cir.), *cert. denied sub nom. Liquidation Comm'n. for BCCI (Overseas) Ltd., Macau v. United States,* ––– U.S. –––, 116 S.Ct. 563, 133 L.Ed.2d 489 (1995), and because it gave nothing of value to BCCI(O).

Accordingly, the government's motion will be granted, and the L–Claim will be dismissed.

## CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the United States' motion to dismiss is granted, and STO's L–Claim is

---

**10.** It is also the law of this Circuit that constructive trusts may not be imposed as superior to the government's forfeiture claim. *In re Petition of Chawla,* 46 F.3d at 1191. To the extent, STO argues that a trust is warranted, its arguments are rejected.

**11.** STO did not argue, nor could it, that in negotiating the Letter of Credit it was acting as Chotiwat's agent and authorized the payment order. Under the Letter of Credit, STO was the beneficiary thereto. As described herein, under the plain language of the N.Y.U.C.C., STO was also the beneficiary of the wire funds transfer, not the originator.

**20**

dismissed. Judgment will be entered separately in accordance with Fed.R.Civ.P. 58.

IT IS SO ORDERED.

*In re* **First Round Petition of State Trading Organization, Republic of the Maldives**

### *JUDGMENT*

Pursuant to the Memorandum Opinion and Order issued this date and in accordance with Fed.R.Civ.P. 58, judgment is hereby entered in favor of the United States and against Petitioner State Trading Organization.

IT IS SO ORDERED.